# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:22-cv-00146-MOC-DSC

LISA BENZING,                   )
                          )
         Plaintiff,        )
                          )
vs.                         )
                          )
USAA OFFICER SEVERANCE PLAN,  )
                          )
         Defendant.     )
_____)

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1, Plaintiff Lisa Benzing ("Plaintiff") files her brief in support of *Plaintiff's Motion for Summary Judgment*. Plaintiff filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.*, seeking severance and other benefits from Defendant USAA Officer Severance Plan (the "Plan"). No genuine issue of material fact exists and Plaintiff is entitled to judgment as a matter of law.

This case is simple. Plaintiff spent her career working in human resources. In September 2019, Plaintiff began working for United Services Automobile Association ("USAA") as Vice President ("VP") of Talent Development. During the next six weeks, USAA changed the focus of Plaintiff's job twice. USAA ultimately assigned Plaintiff to be responsible for information technology issues related to USAA's recent banking violation consent order with the Office of the Comptroller of the Currency ("OCC"). Throughout these two job changes, Plaintiff continued to perform whatever tasks USAA assigned her. Plaintiff received no discipline, write-ups, or counseling related to her employment with USAA. The administrative record contains no

evidence of such. On November 19, 2019, six weeks after Plaintiff began employment, USAA terminated Plaintiff's employment.

Defendant, the Plan, is USAA's severance plan. The Plan's purpose is to "ease the economic stress of loss of employment with the Employer by providing Eligible Employees with Severance Pay." After USAA terminated Plaintiff's employment, she applied for severance benefits under the Plan. Defendant denied Plaintiff's claim, alleging that she missed unspecified meetings during her final week of work and that she refused to meet with her supervisor, Robin Kirby. In Plaintiff's appeal of the denial, Plaintiff provided Defendant with her calendar entries and meetings notes showing that she attended all her meetings during her final week of work, including six separate meetings with Robin Kirby. Defendant did not respond to this evidence. Instead, Defendant denied Plaintiff's appeal without further explanation.

Defendant abused its discretion[1] in denying Plaintiff's claim for severance benefits because:

- Defendant failed to review the information Plaintiff submitted that directly contradicts Defendant's asserted reason for denying Plaintiff benefits;

- Defendant failed to conduct any reasoned or principled decision-making process in adjudicating Plaintiff's claim, ignoring Plaintiff's evidence showing her entitlement to benefits;

- Throughout the entire process Defendant failed to adhere to ERISA's substantive and procedural requirements for adjudicating benefits claims under ERISA;

- Defendant's claim that Plaintiff was terminated for failure to perform her job duties is directly contradicted by Defendant's payment to Plaintiff of other benefits to which Plaintiff would not have been entitled if she had actually been terminated for poor work performance; and

- Defendant has a major financial conflict of interest, as it is both responsible for payment of benefits under the Plan as well as adjudication of Plaintiff's

---

[1] As shown herein, the Court should review Plaintiff's claim for benefits under a *de novo* standard. Even were the Court to review Plaintiff's claim under an abuse of discretion standard, however, Plaintiff is nonetheless entitled to severance benefits under the Plan.

entitlement to benefits under the Plan. The conflict of interest is further demonstrated by Defendant's conduct outlined above.

For these reasons, explained herein, Plaintiff respectfully requests that the Court grant her Motion for Summary Judgment and award her severance benefits under the Plan.

## Background Facts

### Plaintiff was hired as Vice President of Talent Development for USAA.

In spring 2019, USAA's VP of Talent Rewards, Wendy Salmon, recruited Plaintiff for the position of VP of Talent Development at USAA.[2] AR 72. This position focused on human resource issues associated with continued development of USAA employees' skills and capabilities and was consistent with Plaintiff's background and prior jobs, which all focused on human resource issues, especially those related to employee development and human capital for large organizations. AR 73; *see also* AR 175-78 (Plaintiff resume). On August 9, 2019, Plaintiff happily accepted the VP of Talent Development position based on the job duties and responsibilities verbally conveyed to her by USAA representatives, including Ms. Kirby, the Senior VP of Human Resources and Plaintiff's immediate supervisor. When Plaintiff accepted the position, she withdrew from other contemporaneous career opportunities she was contemplating. AR 73. USAA never provided Plaintiff a written job description for her position of VP of Talent Development and none is contained in the administrative record.

### Immediately after Plaintiff began work, USAA substantially changed Plaintiff's job.

Plaintiff relocated her family from Charlotte, North Carolina to San Antonio, Texas, home of USAA's headquarters, and on September 30, 2019 began working for USAA. AR 61. Four days later, on October 3, 2019, Plaintiff met with Ms. Kirby, her supervisor. During that

---

[2] Plaintiff's citations to the Administrative Record correlate to Plaintiff's Bates numbering of the Administrative Record filed with the Court on September 23, 2022. Dkt.#14. On October 7, 2022, Defendant also filed additional documents bates numbered "SUPP 1-82" as part of the Administrative Record. Dkt.#18. For the avoidance of doubt, to the extent Plaintiff refers to the documents filed by Defendant, Plaintiff uses the numbers "SUPP 1-82."

meeting, Ms. Kirby drastically changed Plaintiff's job duties, informing Plaintiff that Plaintiff would no longer be responsible for human resource issues related to talent development, as discussed during Plaintiff's job interviews and consistent with Plaintiff's job title. Rather, Plaintiff would be responsible for overseeing work associated with USAA's recent consent order with the Office of the Comptroller of the Currency ("OCC") related to systemic failures surrounding USAA's banking ventures. AR 74. After accepting the VP of Talent Development position and relocating her family, Plaintiff's job had suddenly changed to addressing USAA's banking regulatory violations and related requirements. Indeed, as shown by the Consent Order,[3] Plaintiff would now be servicing USAA Federal Savings Bank, a different entity than USAA, which originally employed her.

Later that day, Plaintiff contacted Ms. Salmon, who first recruited her, regarding her concern that the role Ms. Kirby had just described was inconsistent with the position for which Plaintiff was hired. Ms. Salmon seemed equally confused and could not explain why the role changed. Ms. Salmon also mentioned that she found it odd that Ms. Kirby recently openly advocated against including Plaintiff on USAA's HR Operating Model Task Force (a group of HR leaders who reviewed how HR could be better structured), which would have been consistent with Plaintiff's initial job duties as VP of Talent Development. AR 75-76.

Also that day, Plaintiff met with Lori Gray, who told Plaintiff, "I heard about your situation. It sounds like the old 'bait and switch.'" Plaintiff had not talked to Ms. Gray or anyone in HR about her concerns with Ms. Kirby's changes to her role and directives. When Plaintiff asked where her comment was coming from, Ms. Gray said, "I'm in HR. We know everything." AR 75.

---

[3] A copy of the Consent Order is attached as Exhibit A. Fed.R.Evid. 201 (court may take judicial notice of information generally known within the trial court's jurisdiction). The Consent Order may be accessed at: https://www.occ.gov/static/enforcement-actions/ea2019-001.pdf.

Although the OCC review was not the kind of work Plaintiff was hired to do, she accepted the responsibility without issue. Over the next several weeks, Plaintiff worked with Chalice Jones, VP/HR Business Partner, to transition the OCC work fully to Plaintiff. On October 9, 2019, Plaintiff had a one-on-one meeting with Ms. Kirby to review the OCC response work. Plaintiff mentioned, again, that this was very different from the responsibilities described to her when Plaintiff interviewed to work for USAA. Ms. Kirby admitted that the job did not allow for HR talent development work, as originally represented to Plaintiff. AR 75.

On October 14, 2019, Plaintiff again met with Ms. Kirby at Ms. Kirby's request. As part of their discussion about the OCC work, Ms. Kirby said she spoke with HR regarding Plaintiff's sign-on bonus and relocation costs. Ms. Kirby assured Plaintiff that USAA would not require her to pay back any relocation expenses and encouraged Plaintiff to leave USAA. Ms. Kirby also shared her personal experience with the "bait and switch" from a previous employer and that Ms. Kirby regretted the duration she stayed with that employer. Given that Plaintiff had begun working at USAA a mere two weeks prior and was still in the onboarding process, Plaintiff was alarmed. Ms. Kirby did not, however, state or imply that Plaintiff's job performance was an issue. AR 76. Later that afternoon, Ms. Jones contacted Plaintiff and expressed that USAA needed Plaintiff's leadership skills and that Plaintiff was an asset to the team. Ms. Jones reiterated that she would remain available to Plaintiff to ensure a smooth transition of the OCC response work.

On October 15, 2019, Plaintiff met with Ms. Kirby to express that she understood the changes Ms. Kirby was implementing to Plaintiff's position and that she was "all in." Ms. Kirby appeared surprised and discouraged by Plaintiff's enthusiasm and commitment. AR 76. The next day, October 16, 2019, Ms. Kirby told Plaintiff that Plaintiff would not present to USAA's

Board of Directors in November, which presentation had been scheduled since before Plaintiff's first day at work. When Plaintiff asked why, Ms. Kirby said only that the timing was not right. Plaintiff was disappointed, as Plaintiff could have demonstrated her expertise in human resources. However, over the next several days, Plaintiff completed the work she was assigned and continued to receive positive feedback from her peers. Plaintiff received no complaints or reports of unsatisfactory performance. AR 76.

**_For a second time in four weeks, USAA changed Plaintiff's job responsibilities and put her in charge of USAA's information technology response to its OCC violations._**

On October 28, 2019, USAA's Executive Vice President/Chief Human Resources Officer, Pat Teague, invited Plaintiff to attend Ms. Teague's HR Leadership Staff Meeting in place of Ms. Kirby. Moments before the meeting, however, Ms. Kirby's administrative assistant relayed that Plaintiff should not attend Ms. Teague's meeting. AR 77. Instead, Ms. Kirby wanted Plaintiff to attend an information technology ("IT") meeting. Plaintiff found this odd: IT was not within her expertise or skillset, nor was it in any way related to the responsibilities for which she was hired. She asked whether the meeting was mandatory and explained that she was already on her way to Ms. Teague's meeting and was told that the IT meeting was not optional. Plaintiff attended the IT meeting. _Id._

During the IT meeting, the Senior VP of IT explained that USAA failed its OCC audit and that IT needed someone new to lead the project. Ms. Kirby appointed Plaintiff as the new lead for the IT Skills Training and refused to provide her any resources. At this point, Plaintiff felt as though Ms. Kirby was intentionally setting Plaintiff up to fail as Plaintiff did not have the requisite experience and/or knowledge in IT (which Ms. Kirby knew) and during the meeting the SVP relayed that two qualified consulting firms (and their extensive resources) could not cure USAA's OCC issues. Plaintiff proactively reached out to contacts from previous jobs for

suggestions to tackle the work. AR 77; *see also* AR 92 (chart showing differences in three separate jobs assigned to Plaintiff).

The next day, Plaintiff reached out to Jamie Wetherell, a USAA HR Business Partner, about this second change in Plaintiff's position in four weeks. Ms. Wetherell suggested Ms. Kirby's behavior over the past several weeks may be because Ms. Kirby was opposed to hiring Plaintiff from the very beginning. According to Ms. Wetherell, the Talent Acquisition team had asked Ms. Wetherell to intervene after Ms. Kirby directed them to not interview Plaintiff. Separately, Ms. Teague, the EVP/CHRO, also apologized to Plaintiff for the confusion regarding her role and responsibilities. AR 74.

On October 30, 2019, during an HR Town Hall, Ms. Teague disclosed that HR was cutting its budget by $37 million. That same day, Ms. Wetherell called Plaintiff and acknowledged that USAA owed Plaintiff clarity on her role. She also asked Plaintiff the "dollar amount" that would relieve the "hardship" Plaintiff endured from taking the position with USAA and relocating her family to San Antonio. AR 77. Plaintiff became concerned that her employment was in jeopardy. Regardless, Plaintiff remained engaged and committed to doing her job. For instance, Plaintiff continued to meet with Ms. Jones and transition the OCC work. As evidence of this commitment and continued engagement with her work and responsibilities, copies of Plaintiff's calendar entries for the week prior to her termination and notes taken during those meetings are included in the filed administrative record. AR 78-79 (providing detailed outline of meetings); AR 104-74 (calendar entries and meeting notes).

### *USAA terminated Plaintiff's employment six weeks after she began working.*

On Thursday, November 14, 2019, Ms. Wetherell told Plaintiff that, according to Ms. Kirby "Staying is no longer an option." AR 79. Plaintiff was devasted, given that six weeks

earlier she had accepted USAA's offer, intending to help the company with her longstanding experience in human resources. Because of Plaintiff's job, she and her husband relocated to San Antonio and purchased property there. Plaintiff was directed to communicate only with Ms. Wetherell until Plaintiff's last day was announced. Later that same evening, Ms. Wetherell informed Plaintiff that Ms. Kirby had directed Plaintiff "not to return to the office." AR 79-80. The following Monday, November 19, 2019, in a conference call, Ms. Kirby terminated Plaintiff. Ms. Wetherell and Mr. Menendez were also present on the call. AR 80. Plaintiff had never been counseled for performance issues or told her work was inadequate, a point confirmed by the absence of work correction documents in the administrative record.

### *Plaintiff's application for severance benefits.*

On December 23, 2019, Plaintiff submitted a written request for severance under the Plan. AR 84-94. On March 16, 2020, on behalf of the Plan, Marcel Menendez denied Plaintiff's claim, stating only that Plaintiff was not eligible for severance benefits because Plaintiff's termination was "due to [her] failure to meet standards of job performance." AR 57-58. The denial letter did not detail what standards the Plan alleged Plaintiff failed to meet or provide any further information.

On April 13, 2020, Plaintiff notified USAA of her intent to appeal the Plan's denial and requested a copy of all documents that Mr. Menendez used to support his decision. SUPP AR 26. On April 22, 2020, Mr. Menendez responded, including no supporting documents other than an electronic salesforce file. SUPP AR 27-34. Plaintiff requested further documentation in a May 11, 2020 email. On May 26, 2020, Mr. Menendez sent one new document: an email from HR Business Partner, Lori Gray, which was copied verbatim in his "Resolution Notes" (the

electronic salesforce file). SUPP AR 35-37; *see also* SUPP AR 28-29 (coping Lori Gray January 15, 2020 email).

Plaintiff appealed the denial. AR 71-174. As show in Mr. Menendez's resolution notes (AR 60-61) and Ms. Gray's email (AR 67), the only grounds stated for the denial of Plaintiff's claim was that Plaintiff did not attend required meetings the final week of her employment, including meetings with Ms. Kirby. Neither the resolution notes nor Ms. Gray's email state what meetings Plaintiff allegedly did not attend. In response, and as part of her appeal, Plaintiff included her calendar entries showing she continued to attend all her meetings her final week of work. Plaintiff also included all the notes she took during those meetings. The meetings during that week included six meetings with Ms. Kirby. AR 104-74. Defendant wholly ignored all of this information, refused to discuss or contradict it, and summarily denied Plaintiff's claim for benefits. AR 182-183. Plaintiff filed the present lawsuit.

<u>Argument</u>

**I.    Structure of the Plan and Defendant's Responsibilities.**

The Plan, which is subject to ERISA, provides severance benefits. Dkt. #5 (Answer), ¶2; Plan, §1.1, 1.2 (AR 45). USAA is the Plan sponsor under ERISA. Answer, ¶3; Plan, ¶1 (AR 45). Patricia Teague, the Executive Vice President, Human Resources, is the plan administrator responsible for making benefits determinations. Plan, §5.1 (AR 51); 29 U.S.C. §1002(21)(A); Answer, ¶16 (affirming Teague as Executive Vice President, Human Resources, since May 2017).

Under the Plan, Eligible Employees are entitled to severance pay when USAA terminates their employment. An "Eligible Employee" is an "Officer of the Employer." Plan, §2.1(d) (AR 46). An "Officer" is any "Employee of the Employer [USAA] who holds the title of Assistant

Vice President or above." Plan, §2.1(e),(f). An "Employee" is an person hired on an at-will basis for an indefinite period of time as a common-law employee of USAA on its domestic payroll. Plaintiff is an Employee under the Plan as she was hired on an at-will basis for an indefinite time period on USAA's domestic payroll. Plan, §2.1(c); AR 1-2 (hiring information confirming at-will status of employment). Plaintiff is also an Officer, as she was hired as a Vice President. AR 1. Therefore, Plaintiff was an Eligible Employee under the Plan. Defendant does not question Plaintiff's status as an Eligible Employee under the Plan. AR 57-67 (initial denial letter); 182-183 (appeal denial letter).

## II. Summary judgment standard.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

## III. The Court must review Defendant's denial of Plaintiff's claim for benefits under a *de novo* standard of review.

### A. The Plan does not provide the individual who denied Plaintiff's benefits claimany discretionary authority.

The initial issue in any ERISA benefits case is the applicable standard of review. A denial of benefits should be reviewed *de novo* unless the plan terms grant the plan administrator discretionary authority to determine benefits or interpret the plan. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). The Court must first consider *de novo* whether the plan documents confer discretionary authority on the party making the benefits determination. *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 321-322 (4th Cir. 2008). Any ambiguity or uncertainty regarding whether a plan administrator has discretionary authority is construed against the drafter. *Cosey v. Prudential Ins. Company*, 735 F.3d 161, 165-167 (4th Cir. 2013).

In the present case, the Plan provides that the "Executive Vice President, Human Resources shall appoint, or, in the absence of such appointment shall be, the Plan Administrator (within the meaning of Section 3(16) of [ERISA])." AR 52 (Plan, §5.1). The administrative record lacks any appointment by the Executive Vice President, Human Resources of anyone to act as plan administrator. Therefore, the Plan's plain terms provide that the Executive Vice President, Human Resources, is the plan administrator charged with making benefits determinations under the Plan. *CIGNA Corp. v. Amara*, 563 U.S. 421, 435-36 (2011) (ERISA §502(a)(1)(B) requires court to enforce "the terms of the plan.") Defendant admitted that Patricia Teague has been the Executive Vice President, Human Resources since May 2017, during the entire administration of Plaintiff's claim under the Plan. Answer, ¶16. Defendant also admitted that Ms. Teague did not make the benefits determination in this case. Answer, ¶17. Rather, Jeanne Hertz, the Vice President of Shared Service—Human Resources, made the benefits determination. Answer, ¶ 17; AR 182-83. Because the Plan provides discretionary authority only to Ms. Teague (as the Executive Vice President, Human Resources) and there is no showing in the administrative record that Ms. Teague expressly delegated her authority to anyone (including Ms. Hertz), the denial decision by Ms. Hertz is reviewed under a *de novo* standard. *E.g.*, *Grooms v. Reliance Std. Life Ins. Co.*, 2009 WL 2878448 (M.D.N.C. 2009) (applying *de novo* review standard and holding: "I do not find any language in the policy granting discretionary powers to Wachovia as the administrator, nor do I find a provision in which [the plan administrator] has expressly delegated its discretionary authority to Wachovia; therefore, it appears that *de novo* review is appropriate.")

**B.** **Even if the Plan's decision were reviewed for abuse of discretion, its denial was unreasonable and therefore should be overturned.**

As noted, the Court should review Defendant's denial *de novo*. *De novo* review is a more rigorous standard than abuse of discretion. Therefore, if Defendant's denial was an abuse of discretion, Plaintiff would also be entitled to benefits under a *de novo* review. *See Wilkinson v. Sun Life & Health Ins. Co.*, 674 Fed.Appx. 294 (4th Cir. 2017) (declining to determine applicable standard of review because plaintiff would win under abuse of discretion standard). Given that abuse of discretion is a higher standard, solely for purposes of argument, Plaintiff explains why Defendant's denial amounts to an abuse of discretion and therefore why Plaintiff is entitled to benefits.

"Applying a deferential standard of review does not…mean the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 559 U.S. 506, 521 (2010). An administrator's decision is reasonable only "if it is the result of a deliberate, principled reasoning process and…supported by substantial evidence." *DuPerry v. Life Ins. Co.,* 632 F.3d 860, 869 (4th Cir. 2011); *Bernstein v. Capital Care, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (same). "Substantial evidence is the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient support to a particular conclusion." *Donnell v. Metro Life Ins. Co.,* 165 Fed. Appx. 288, 295 (4th Cir. 2006).

Under this standard of review, "a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Novick v. Metro. Life Ins. Co.*, 914 F.Supp.2d 507, 525 (S.D.N.Y. 2012). *See also DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418-19 (4th Cir.

2007) ("Fiduciaries must also scrupulously adhere to a duty of loyalty, and make any decisions

in a fiduciary capacity with 'an eye single to the interests of the participants and beneficiaries.'")

To determine whether an administrator's decision was reasonable and based on

substantial evidence, the Fourth Circuit uses the following non-exhaustive factors:

> This court has alternatively framed reasonableness as an open-ended inquiry that
> may, in addition to other relevant issues, consider the following eight factors: "(1)
> the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy
> of the materials considered to make the decision and the degree to which they
> support it; (4) whether the fiduciary's interpretation was consistent with other
> provisions in the plan and with earlier interpretations of the plan; (5) whether the
> decision-making process was reasoned and principled; (6) whether the decision
> was consistent with the procedural and substantive requirements of ERISA; (7)
> any external standard relevant to the exercise of discretion; and (8) the fiduciary's
> motives and any conflict of interest it may have."

*Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d. 335, 342-43 (4th Cir.

2000) (internal citation omitted). Here, the relevant *Booth* factors are (1) the purposes and goals

of the plan, (2) the adequacy of the materials considered to make the decision and the degree to

which they support it; (3) whether the decision-making process was reasoned and principled; (4)

whether the decision was consistent with ERISA's procedural and substantive requirements; (5)

whether the fiduciary's interpretation was consistent with external standards relevant to the

exercise of discretion; and (6) Defendant's motives and conflict of interest.

**IV.     Plaintiff is entitled to severance benefits under the Plan.**

**A.     Defendant's denial of Plaintiff's claim is inconsistent with the purposes and
goals of the Plan.**

The Plan expressly provides that its purpose is "to ease the economic stress of loss of

employment with the Employer by providing Eligible Employees with Severance Pay." AR 45

(Plan, §1.2). *See also* AR 34 (hiring material provided to Plaintiff describing the Officer

Severance Plan stating: "USAA sponsors the USAA Officer Severance Plan (for AVPs

[Assistant Vice President] and above) to ease the economic stress of loss of employment by providing severance benefits in the event of certain terminations.")  USAA terminated Plaintiff's employment a mere six weeks after she began employment.  As the entire purpose of the plan is to "ease the economic stress of loss of employment with [USAA] by providing [Plaintiff] with Severance Pay as hereinafter set forth," this factor weighs in favor of finding Defendant abused its discretion in denying Plaintiff's claim for severance benefits in contravention of the basic purpose of the Plan.

**B.  Defendant failed to make basic inquires and consider basic documents and other materials relevant to Plaintiff's claim.  Defendant wholly ignored all of Plaintiff's evidence.**

The second *Booth* factor the Court must examine is the adequacy of the materials considered by Defendant to make its denial decision and the degree to which they support it.  As the Court of Appeals for the Fourth Circuit has stated, "A complete record is necessary to make a reasoned decision, which must 'rest on good evidence and sound reasoning; and … result from a fair and searching process.'"  *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) (internal citation omitted).  Defendant did not undertake to review adequate materials. The materials it did review do not support its denial decision, for three reasons.

First, Defendant did not review or obtain any information from the individual who terminated Plaintiff, Robin Kirby.  Mr. Menendez admitted that the only information he considered was an email from Lori Gray providing a statement from Jamie Weatherall about what Robin Kirby allegedly told Ms. Weatherall.  AR 35-36.[4]  That is, as the definitive and sole source of information concerning the circumstances surrounding the reasons for Plaintiff's

---

[4] Mr. Menendez's letter stated: "I have enclosed a copy of the email from Lor Gray summarizing the circumstances surrounding Ms. Benzing's separation from employment.  Other than the documents we previously provided in response to Ms. Benzing's April 13 request, this was the only additional document that I reviewed when making my determination to deny Ms. Benzing's claim for severance benefits under the plan."

termination, Mr. Menendez chose to accept a triple-hearsay statement.[5]  Additionally, even if it made sense to consider this information, Ms. Gray's email was not contemporaneous with Plaintiff's termination.  Rather, it was created two months after termination and not as part of her employment termination or file, but solely to respond to (and deny) Plaintiff's claim for severance benefits.  AR 67 (email of Lori Gray dated January 15, 2020).  Notably, the information provided by Mr. Menendez shows a "case team" of 27 individuals who apparently reviewed the one-paragraph severance determination made by Mr. Menendez.  AR 60-61 (severance determination copying email of Lori Gray contained at AR 67); AR 64-65 (listing 27 individuals having access to case file).  Yet out of 27 individuals apparently reviewing or looking at Plaintiff's severance case file, none of them are Ms. Kirby, who terminated Plaintiff.

Second, Defendant refused to consider the evidence Plaintiff provided that directly contradicts the claimed reason for Plaintiff's termination.  According to Defendant, Plaintiff was terminated because "in the week prior to her separation, [Plaintiff's] relationship with Robin [Kirby] became so tenuous—as described by Lisa—that she refused to continue meeting with Robin, stopped coming into the office, and missed several meetings without notice."  AR 60, 67.  Upon receiving this information, Plaintiff asked for all information to show any "missed meetings."  SUPP AR 26.  Defendant never provided Plaintiff dates of any meetings that Plaintiff allegedly missed and cited none in its final denial.  AR 183-84.  In addition, Plaintiff provided Defendant her calendar entries and meetings notes for the last week of work, showing she attended all meetings, including six separate meetings with Robin Kirby.  AR 106-108 (November 11, 2019 meeting with Robin Kirby); AR 121-23 (November 11, 2019 meeting with Robin Kirby and others regarding OCC consent order work); AR 126, 133-34 (November 12, 2019 meeting with Robin Kirby); AR 135-36 (November 12, 2019 meeting with Robin Kirby

---

[5] Ms. Gray was not present in Plaintiff's termination meeting.

and others); AR 137-38 (November 12, 2019 one-on-one meeting with Robin Kirby); AR 169-72 (November 14, 2019 meeting with Robin Kirby).[6] Despite Plaintiff providing evidence that directly contradicted Defendant's claimed reason for Plaintiff's termination, Defendant refused to consider this evidence and did not respond to it. AR 182-83. *See* 29 C.F.R. §2560.503-1(h)(2)(iv) (a plan does not provide a "full and fair" review of a benefit claim unless it "takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."); *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833 (2003) (claims administrator "may not arbitrarily refuse to credit a claimant's reliable evidence."); *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (same).

Third, Defendant did not discuss or review the payments made to Plaintiff by USAA after her termination. As shown *infra* at section IV.E., Defendant paid Plaintiff sign-on bonuses after Plaintiff was terminated but before any adjudication of her severance claim. The language of the sign-on bonuses made clear that Plaintiff would not be paid such bonuses if she were terminated "for cause." If Plaintiff were in fact terminated for cause—failing to perform her job duties— USAA would not have paid those bonuses. Defendant failed to consider the payment of the bonuses, which by their very terms showed that USAA did not terminate Plaintiff for failing to perform her job duties. *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) ("A searching process does not permit a plan administrator to shut his eyes to the most evident and accessible sources of information that might support a successful claim…. ERISA does not envision that the claims process will mirror an adversarial proceeding.")

---

[6] As noted *supra*, Jamie Weatherall told Plaintiff on the evening of Thursday, November 14, 2019 that Robin Kirby was going to terminate Plaintiff and that Ms. Kirby did not want Plaintiff to return to USAA's San Antonio office. Plaintiff did not have any meetings on November 16-17, 2019 (the weekend). Ms. Kirby terminated Plaintiff the following Tuesday, November 19, 2019.

As the individuals adjudicating Plaintiff's claim for benefits on behalf of the Plan, Mr. Menendez and Ms. Hertz acted as fiduciaries in that capacity. *L.B. ex rel. Brock v. United Behavioral Health, Inc. Wells Fargo & Co. Health Plan*, 47 F.Supp.3d 349, 360 (W.D.N.C. 2014) (person adjudicating benefits claims acts as a fiduciary in that regard and is tasked with acting "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits.") (citing 29 U.S.C. § 1104(a)(1)(A)). ERISA further requires a fiduciary to act with the skill, care, prudence, and diligence that a prudent man in like circumstances would employ. 29 U.S.C. §1104(a)(1)(B). A fiduciary acting in a prudent manner and desiring to provide a full and fair adjudication of Plaintiff's claim would certainly have (1) wanted to obtain information from Robin Kirby, the actual person terminating Plaintiff, rather than blindly accepting a triple-hearsay account of the alleged reasons for the termination; (2) considered Plaintiff's calendar entries and meeting notes showing that she attended all meetings and had six separate meetings with Mr. Kirby the final week of her employment; and (3) considered USAA's admission, via its post-termination bonus payments to Plaintiff, that it did not terminate Plaintiff for failing to perform her job duties. Defendant did none of these. Instead, from Defendant's failure to consider any of these materials, it is clear that the adjudicatory process was pre-determined and no amount of contrary evidence was going to persuade the fiduciaries and Defendant to do their ERISA-mandated job of fully and fairly processing Plaintiff's claim for benefits.

### C. Defendant's decision-making process was neither reasoned nor principled.

The Plan further abused its discretion by failing to engage in a reasoned or principled decision-making process with respect to Plaintiff's claim for benefits. First, as noted *supra*, there is a complete absence of anything in the administrative record showing Plaintiff performed

poorly at work.  If anything, the administrative record shows that down to the last week of her employment with Defendant, Plaintiff continued to perform her job, even when USAA changed that job twice over a period of six weeks and assigned Plaintiff, a career human resources professional, banking and information technology tasks.

Second, any reasoned and principled decision-making process would require a fiduciary—an individual acting with an "eye single" to the best interests of participants—to review, consider, and discuss evidence showing that USAA's stated reason for terminating Plaintiff was demonstrably false.  As shown *supra*, Defendant totally ignored all of the uncontradicted information Plaintiff provided.  *White v. Eaton Corp. Short Term Disability Plan*, 308 Fed. Appx. 713, 719-20 (4th Cir. 2009) (holding that benefits denial was abuse of discretion when plan administrator failed "to seriously engage in a discussion of [plaintiff's] favorable evidence."); *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) ("[A] plan administrator cannot be willfully blind to … information that may confirm the beneficiary's theory of [benefits due]."); *Harley v. International Paper Co. Long Term Disability Plan*, 586 F.Supp.2d 428, 439 (D.S.C. 2007) ("It ... seems clear that a plan administrator abuses its discretion when it relies on erroneous information.")  Even if Defendant still wanted to provide some credence to USAA's statement that Plaintiff was terminated for poor work performance (despite Plaintiff's uncontradicted evidence to the contrary), Defendant, as a fiduciary adjudicating Plaintiff's claim, was still required to explain why it made such a decision. Defendant made no such analysis and provided no such explanation.  AR 182-83; *Scott v. The PNC Bank Corp.*, 2011 U.S. Dist. LEXIS 15034, *15 (D. Md. 2011) (plan administrator must support its decision to adopt one version of events over another or it abuses its discretion).

Defendant's adjudication of Plaintiff' claim was not reasoned or principled and Defendant thereby abused its discretion.

**D.     The Plan failed to comply with ERISA's substantive and procedural requirements.**

Defendant's decision and adjudicatory process failed to comply with ERISA's substantive and procedural requirements for five reasons.

**1.     The Plan did not provide Plaintiff the specific reasons for the denial of her initial claim for benefits.**

ERISA's claims regulations require that Defendant provide Plaintiff in writing the "specific reason or reasons" for the denial of her claim.  29 C.F.R. §2560.503-1(g)(1)(i).  In the present case, the only statement Defendant made in its denial letter is that USAA allegedly terminated Plaintiff for "failure to meet standards of job performance."  AR 57.  Defendant provided no information regarding this statement so that Plaintiff could respond.  29 C.F.R. §2560.503-1(g)(1)(ii) (administrator denying benefits claim must provide claimant a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.")  The Plan document promises that the specific reason for denial will be provided.  Plan, §5.3(a)(1), (2).  Without such information, Plaintiff was unable to respond to the denial.  *Hall v. Met. Life Ins. Co.*, 259 Fed. Appx. 589, 593 (4th Cir. 2007) ("The statutory and regulatory text and the case law demand that judicial review take into account only reasons for an adverse benefits determination offered in the initial denial notice, because those are the only rationales on which a claimant might have arguably been given a 'full and fair' opportunity to respond during the administrative process.").  Had Plaintiff not persisted in seeking information about Defendant's allegation that Plaintiff failed to attend meetings, Plaintiff would not have known to provide

Defendant with her calendar entries and meeting notes showing definitively that she attended all meetings. *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) ("ERISA does not envision that the claims process will mirror an adversarial proceeding.") Defendant's failure to provide Plaintiff with the specific reasons for the denial of her claim for benefits violated ERISA's claims regulations and breached Defendant's fiduciary duty in adjudicating Plaintiff's claim.

> **2. The Plan failed to provide Plaintiff copies of information allegedly relevant to Plaintiff's claim despite Plaintiff's request for the same.**

Section 2560.503-1(h)(2)(iii) of ERISA's claims regulations (29 CFR) states that a plan does not conduct a full and fair review of a claim unless the claimant is provided, free of charge, "copies of [] all documents, records, and other information relevant to the claimant's claim for benefits." Plaintiff requested such documents from Defendant. SUPP AR 26. However, as shown by Defendant's own request to expand the administrative record in this case, Defendant did not provide Plaintiff with all documents, records, and other information that it now claims are relevant to Plaintiff's claim. *See* Dkt.#18 (Def SUPP AR 1-82). Notably, in responding to Plaintiff's request for documents related to or considered in the denial of Plaintiff's claim, Mr. Menendez stated he was providing only one document and several pages (that he earlier provided) because he didn't consider anything else and nothing else was relevant. AR 35. Defendant's additions to the administrative record make clear that Mr. Menendez, acting as a fiduciary in adjudicating and responding to Plaintiff's claim on behalf of the Plan, failed to follow ERISA's claims procedures and provide Plaintiff all relevant documents. Defendant failed to adjudicate Plaintiff's claim consistent with ERISA's requirements.

### 3. The Plan did not consider any of the documents Plaintiff submitted for her appeal.

ERISA's claims regulations at 29 CFR 2560.503-1(h)(2)(iv) provide that a plan does not conduct a full and fair review of a claim unless the plan "provides for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefits determination." Defendant's initial denial letter promises that such a review would occur. AR 58 ("The Plan Administrator will conduct a full and fair review that takes into account all written comments, documents, records and other information relevant to your claim.")

On appeal, however, Defendant ignored all of the information Plaintiff provided and failed and refused to respond to Plaintiff. After Plaintiff provided her calendar entries and meeting notes, Defendant did not attempt to defend its claim that Plaintiff was terminated for failing to attend meetings. AR 182-83. *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) ("[A] plan administrator cannot be willfully blind to … information that may confirm the beneficiary's theory of [benefits due].")

### 4. The Plan failed to provide Plaintiff specific reasons for the denial of her appellate claim.

ERISA's claims regulations at 29 CFR §2560.503-1(j)(1) and (2) provide that notice of denial of an appellate claim must include the "specific reason or reasons for the adverse determination [and] [r]eference to the specific plan provisions on which the benefit determination is based." As explained previously, the final denial letter from Defendant contained no specific reasons and no reference to plan provisions on which the appellate denial was based. AR 182-83. Rather, it provided nothing more than the same conclusory assertion

stated in the initial denial letter with no explanation of the reasons for denial of Plaintiff's claim and no discussion of Plaintiff's uncontradicted evidence. *Compare* AR 57-58 *with* AR 182-83.

     **5.     The Plan failed to advise Plaintiff of her right to documents and information used in her adjudicating her claim on appeal.**

     Section 2560.503-1(j)(3) of the ERISA regulations (29 CFR) provides that the notice of denial of an appellate claim must include a "statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." Defendant's denial of Plaintiff's appellate claim for benefits failed to meet those requirements. AR 182-83. Defendant's failure to provide this basic information, as required by the ERISA claims regulations, is consistent with its other failures to provide basic, required information to Plaintiff during the administrative process, as outlined above.

     From the initial to final denial letters, the Plan did not comply with the procedural and substantive requirements of ERISA's claims procedures. Defendant failed in its fiduciary responsibility to adjudicate Plaintiff's claims in a full and fair manner and to comply with even the basic standards of the ERISA claims regulations. Defendant abused its discretion in adjudicating Plaintiff's claim in this regard.

**E.     Defendant's claim that Plaintiff was terminated for failing to meet standards of job performance is directly contradicted by USAA's payment to Plaintiff of other benefits upon her termination, which benefits could not have been paid if Plaintiff was terminated for poor performance.**

     The fourth applicable *Booth* factor is whether Defendant's interpretation was consistent with external standards relevant to the exercise of discretion. Defendant alleged in both its initial and appeals denial that USAA terminated Plaintiff on account of her "failure to meet

standards of job performance." AR 57, 182-83. Defendant's unsubstantiated allegation is directly contradicted by USAA's payment to Plaintiff of other benefits.

As part of her compensation package, Plaintiff was provided three sign-on bonuses. AR 1, 3, 4-5. The first bonus was to be paid after 45 days of employment, the second bonus paid one year after employment, and the third bonus paid two years after employment. AR 1,4. If Plaintiff was terminated by USAA within one year after she began employment for a "Disqualifying Termination," Defendant was permitted to reclaim the sign-on bonuses. AR 4. A "Disqualifying Termination" includes a termination "for cause." *Id.*

USAA terminated Plaintiff on November 19, 2019. USAA paid Plaintiff the first sign-on bonus on November 25, 2019. USAA paid Plaintiff the second and third sign-on bonuses on January 9, 2020. That is, USAA paid Plaintiff the three sign-on bonuses *after* her termination. Ex. B (Declaration of Lisa Benzing).[7] USAA knew at the time it terminated Plaintiff's employment the reasons for that termination. Indeed, USAA and Defendant later stated that Plaintiff was terminated because she missed meetings, including meetings with her supervisor Robin Kirby, during her last week of work.[8] AR 60-61. USAA nonetheless paid Plaintiff all her sign-on bonuses after terminating Plaintiff. If USAA terminated Plaintiff for failure to meet standards of job performance, as USAA claimed, USAA would not have paid Plaintiff her sign-on bonuses, as Plaintiff was not entitled to those bonuses if she was terminated "for cause."

---

[7] *Helton v. AT & T Inc.*, 709 F.3d 343, 354-357 (4th Cir. 2013) (court may consider evidence outside the administrative record on both *de novo* and abuse of discretion review; "a district court in many cases may not be able to adequately assess a number of the *Booth* factors in the absence of evidence from outside the administrative record.")
[8] As shown *supra*, Plaintiff's calendar entries and meeting notes show this allegation by USAA is false.

Defendant knew that USAA did not terminate Plaintiff for cause because USAA paid

Plaintiff all her sign-on bonuses even after her termination.[9]  Defendant, however, ignored this

evidence and failed to address it in either its initial denial or denial on appeal.  Because

Defendant's claim that Plaintiff was terminated for failure to meet performance standards is

wholly inconsistent with USAA's determination that Plaintiff was not terminated for cause,

Defendant abused its discretion in denying Plaintiff benefits.

**F.      Defendant had a substantial conflict of interest, which led to its abuse of discretion in adjudicating Plaintiff's claim for benefits.**

Defendant was responsible for both evaluating and paying claims under the Plan, which

are  conflicting interests.  The Plan is self-funded and USAA is responsible for all payments

under the Plan. Plan, §3.1 (AR 48).  Marcel Menendez and Jeanne Hertz, employees of USAA

and individuals working on behalf of the Plan, made the decisions to deny Plaintiff's claim.  AR

57-58, 182-83.  The Court must weigh this conflict in determining whether the Plan abused its

discretion.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).  As the U.S. Supreme Court

observed, "The conflict of interest at issue here…should prove more important (perhaps of great

importance) when circumstances suggest a higher likelihood that it affected the benefits

decision."  *Id*. at 117.  In the present case, the conflict of interest lead Defendant to fail to (1)

conduct any reasonable inquiry into the circumstances of Plaintiff's termination; (2) consider any

of the evidence Plaintiff provided showing all USAA's stated reasons for its termination of

Plaintiff were false and misleading; (3) comply with ERISA's procedural and substantive

requirements in adjudicating Plaintiff's claim; and (4) review other separation payments made to

Plaintiff by USAA, which payments definitively show that Plaintiff was not terminated for poor

---

[9] *Helton v. AT & T Inc.*, 709 F.3d 343, 356-357 (4th Cir. 2013) (administrator making benefits decision is deemed to have knowledge of corporate books and records, as well as knowledge of other corporate employees working at the time the benefits decision was rendered).

performance.  In short, the fiduciaries, Mr. Menendez and Ms. Hertz, on behalf of the Plan, wholly failed to act consistent with their fiduciary duties of acting "solely in the interest of participants" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a), ERISA §404(a).  Defendant's actions show its financial conflict as a major factor demonstrating abuse of discretion in the denial of Plaintiff's claim for severance benefits.

## V.      Plaintiff is entitled to attorneys' fees under ERISA

ERISA provides a court may allow a reasonable attorney's fee and costs to either party. 29 U.S.C. §1132(g)(1).  In keeping with local practice, Plaintiff requests the Court set a deadline for filing an attorney's fees and costs petition supported by appropriate documentation, following entry of summary judgment.

## <u>Conclusion</u>

Plaintiff respectfully requests that the Court grant her motion for summary judgment.


Dated this the 12th day of November 2022.

> Respectfully Submitted,
>
> */s/ Bryan L. Tyson*
> */s/ Hannah Auckland*
> Bryan L. Tyson (N.C. Bar. No. 32182)
> Hannah Auckland (N.C. Bar. No. 35953)
> Marcellino & Tyson, PLLC
> 2200 East 7th Street, Suite 100
> Charlotte, North Carolina 28204
> Telephone: 704.919.1519
> Fax: 980.219.7025
> bryan@yourncattorney.com
> hauckland@yourncattorney.com
>
> **Attorneys for Plaintiff Lisa Benzing**