# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:22-cv-00146-MOC-DSC

| | |
|---|---|
| LISA BENZING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) DEFENDANT'S MEMORANDUM IN |
| vs. | ) SUPPORT OF SUMMARY JUDGMENT |
| | ) |
| USAA OFFICER SEVERANCE PLAN, | ) |
| | ) |
| Defendant. | ) |

## PRELIMINARY STATEMENT

Plaintiff began working for United Services Automobile Association ("USAA") on September 30, 2019, as Vice President of Talent Development. Plaintiff was a participant in the Defendant USAA Officer Severance Plan ("Severance Plan" or "Plan"). Plaintiff's Complaint seeks several hundred thousand dollars of benefits ("Severance Pay") under the Plan pursuant to §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), of the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA").

A "Qualifying Termination" for severance under the Plan, however, does "**not** include," among other things, "*Termination due to the failure to meet standards of job performance*." (Plan §2.1(j)(iv), AR47; some emphasis added.) As outlined herein and reflected in the administrative record of Plaintiff's application for Plan benefits, Plaintiff failed to meet the standards of job performance. If she had been performing her job, USAA certainly would not have invested so much in her only to terminate her employment seven weeks after it started, as discussed below.

Plaintiff was terminated on November 19, 2019, for failing to meet the standards of her job duties, demonstrating a lack of judgment and culminating in a loss of confidence in her ability to perform the functions of her job. Contingent upon USAA and Benzing entering into a separation and release agreement, USAA offered to: (i) forego recoupment of $187,000 of the initial sign-on bonus payment that was made to Plaintiff; (ii) make an additional payment of $373,000 in lieu of sign-on bonuses she would have been eligible for if she had remained employed with USAA for approximately two more years; and (iii) not seek to recoup the payments totaling approximately $75,000 related to her relocation expenses.

On January 9, 2020, USAA payroll personnel mistakenly paid Plaintiff $373,000 via direct deposit for future sign-on bonuses that Plaintiff could have earned only if she had continued working for USAA for approximately two additional years. This payment was not owed to Plaintiff and was offered to her after her termination contingent upon her executing a separation and release agreement. Plaintiff did not sign the agreement, yet has not returned the funds. Plaintiff has already received $560,000 in sign-on bonuses to which she was not entitled, despite only working seven weeks.

The Plan confers discretionary authority on the Plan Administrator to interpret the Plan and determine eligibility for benefits. Under the controlling legal authorities, that means the Plan Administrator's decisions on benefit claims are reviewed under the abuse of discretion standard, "the most deferential review standard in American jurisprudence," as this Court has observed. In the exercise of her discretionary authority, the Plan Administrator determined that Plaintiff was terminated from her employment with USAA, in the words of the Plan, "due to the failure to meet standards of job performance," precluding an award of Plan benefits.

In light of the Plan's plain language as applied to the facts in the administrative record, the Plan Administrator's decision denying Plaintiff's application for benefits, far from being an abuse of discretion, was the only decision the record could justify. The Court should therefore grant the Plan summary judgment and dismiss Plaintiff's benefits claim with prejudice. Summary judgment should also be granted on Plaintiff's companion claim for attorney's fees and costs, which necessarily fails along with her claim for benefits.

## STATEMENT OF FACTS

### I. The Hiring Process.

USAA invested a significant amount of time in recruiting Plaintiff – "several months" (AR85[1]) – during which Plaintiff estimates she interviewed with about a dozen people (AR85).

The recruitment process began in the Spring of 2019, when a friend and former colleague "reached out to [Plaintiff] regarding an available position at USAA." (AR72, 85.) The position ultimately turned out to be Vice President of Talent Development (Compl., DE1, ¶10; AR73), reporting to Robin Kirby ("Kirby"), Senior Vice President of Human Resources (AR85, 86; SAR75[2]). Along the way, Plaintiff reports, "I interviewed with 11 people" (AR85), between May 22, 2019, and August 1, 2019 (AR72-73). The initial set of interviews included: (1) a May 22, 2019 telephone interview with USAA's Senior Executive Recruiter Tammi Ramsey; (2) Plaintiff's first interview with Kirby via telephone on June 6, 2019; and (3) a June 19, 2019 telephone interview with HR Business Partner Jamie Wetherell. (AR72.) On July 16, 2019, Plaintiff traveled from Charlotte to San Antonio, Texas, for an onsite, in-person series of interviews. (AR72, 73,

---

[1] "AR" refers to the bates number of the pages in those portions of the administrative record filed by Plaintiff at DE14.

[2] "SAR" (short for "USAA SUPP AR") refers to the bates number of the pages in those portions of the administrative record filed by the Plan at DE18.

74.) "Throughout the day" of the in-person interviews, Plaintiff spoke with Kirby. (AR73.) She was also interviewed by USAA's Executive Director of Talent Acquisition, Director of Talent Management, and a Vice President of HR, among others. (AR73.) Plaintiff's final interview was with USAA's Chief Human Resources Officer, Pat Teague, on July 24, 2019. (AR73.)

A few days later, on August 1, 2019, Senior Executive Recruiter Ramsey telephoned Plaintiff to offer her the position of Vice President of Talent Development. (AR73.) Plaintiff accepted the position on August 9, 2019. (AR73.)

USAA matched its investment of time with an investment, as Plaintiff puts it, of "significant company expense" (AR76), spending just short of $75,000 on her relocation from Charlotte, North Carolina, to San Antonio, Texas ($74,676.06, to be exact) (SAR8-16), in addition to the aforementioned $560,000 in sign-on bonuses that she was offered if she met specific terms that included remaining employed for two years and forty-five days.

**II. Plaintiff's Termination from Employment.**

Plaintiff began her at-will employment with USAA on September 30, 2019. Unfortunately, Kirby's enthusiasm over Plaintiff and the Company's investment of time and money turned out to be misplaced. Plaintiff was terminated on November 19, 2019, seven weeks and a day after she began employment due to loss of confidence/lack of judgment. (Compl. ¶¶10, 12; SAR77.)

A "Qualifying Termination" for severance under the Plan does "**not** include," among other things, "***Termination due to the failure to meet standards of job performance***." (Plan §2.1(j)(iv), AR47; some emphasis added.)

On November 18, 2019, the day before Kirby terminated Plaintiff's employment, Employee Relations informed the Legal Department that Benzing's employment was being terminated due to "Loss of Confidence." (SAR70.)

4

On November 19, Rebecca Campos, Employment Relations Transaction Specialist, documented the reason for Plaintiff's termination as "Involuntary>Loss Confidence/Lack Judgment" on a document entitled "View Terminate Employee Event: Terminate: Lisa Benzing," (SAR71.) Campos further explained that Plaintiff was terminated for "Loss of confidence due to inability to perform" her job duties. (SAR71.)

The Salesforce Case document memorializing Plaintiff's termination likewise records Plaintiff's "involuntary termination: inability to perform role." (SAR73.)

Human Resources' "Separation summary on Lisa Benzing" included the following:

- Plaintiff told Kirby of her "displeasure" at the focus of her work.

- Much of Plaintiff's work "did not interest her," even though "it was part of the full scope of the role she was hired to perform."

- In the week preceding Plaintiff's termination, her relationship with Kirby became "tenuous" (Plaintiff's word).

- Plaintiff "refused to continue meeting with" Kirby.

- Plaintiff "stopped coming to the office."

- Plaintiff "missed several meetings without notice."

(SAR6.) The "Separation summary" continues:

> Because of this *lack of engagement*, *lack of accountability* for the full portfolio of work she was hired to deliver, and *inability to transition* into acceptance mode on the scope and urgency on the Learning work, *Robin Kirby lost confidence in Lisa's ability to adequately engage and deliver at the required pace*. As such, Robin Kirby made the decision to terminate Lisa's employment effective 11/19/19 for loss of confidence/lack of judgment.

(SAR6; emphasis added.)

Plaintiff represents she has an audio recording of the November 19 call when Kirby notified Plaintiff of the termination, in which Kirby told her:

> We are going to move forward with the termination.

> We just feel that we don't have the confidence any longer that your interest is here in the role and that your ability to deliver at the pace and the quality level that is going to be required as we go forward is going to be there.

(AR80, 85.)

The above reasons reflect a "*[t]ermination due to the failure to meet standards of job performance*" under the Plan.

Furthermore, in Plaintiff's application for Severance Pay, she essentially admitted the validity of the reasons for her termination:

- "I was transparent with Robin [Kirby] re: my concerns and told her that the Learning/Training area was *not my biggest passion or area of deep subject matter expertise*." (AR89; emphasis added here and in following bullet points.)

- Plaintiff told HR Business Partner Jamie Wetherell "I was not interested in leaving USAA, and that I just needed time to understand how I can make an impact in the training/learning Consent Order space given that *wasn't my area of deep subject matter expertise*." (AR89.)

- On October 15, 2019, Kirby "cautioned me to 'be careful with this. *It seems you are mentally looking for timelines regarding doing the work that's fun for you*.'" (AR89.)

- "It became very evident that *my skills no longer aligned* with the new job requirements." (AR90.)

- "And, in full transparency, *I would not have hired me* to do the role as Robin [Kirby] has since defined it." (AR90.)

- "*I do not have experience* designing technical skills training programs or leading IT technical training projects." (AR90.)

- "*[N]or do I have experience* de-centralizing training or working in a Consent Order/highly audited environment." (AR90.)

On Plaintiff's appeal of the Claims Administrator's denial of her initial application for benefits, her then-attorney, Erin Ball, Esq., of Gardner Skelton, made similar admissions in her 13-page single-spaced letter to the Plan Administrator. (AR71-83.) Ms. Ball's letter admits that "it

is possible" Kirby construed Plaintiff's conduct as expressing "displeasure" with her work (AR81); that the work assigned to Plaintiff "did not energize" her like the work she preferred (AR81); and that Plaintiff "had no prior experience" doing the work Kirby assigned to her (AR82).

### III. Plaintiff's Application for Benefits.

Plaintiff applied for Severance Pay under the Plan (*see* Plan §2.1(*l*), AR48) on or about December 23, 2019 (AR85). The Plan provides that "[i]n the event of a ***Qualifying Termination***, the Plan Administrator will determine the Severance Pay, ***if any***, to be provided to any Employee." (Plan §4.1, AR48; emphasis added.) The Plan Administrator (*see* Plan §2.1(g), AR46) has "the ***discretionary authority*** to determine whether an event constitutes a 'Qualifying Termination'" (Plan §2.1(j), AR47; emphasis added). A "Qualifying Termination" does "**not** include," among other things, "***Termination due to the failure to meet standards of job performance***." (Plan §2.1(j)(iv), AR47; some emphasis added.)

The Plan grants the Plan Administrator broad discretionary authority, in addition to that specifically granted for determining if a termination is "Qualified":

> Notwithstanding anything to the contrary herein, the Plan Administrator shall have ***sole and absolute discretion*** to ***interpret*** the provisions of the Plan (including, without limitation, by supplying omissions from, correcting deficiencies in, or resolving inconsistencies or ambiguities in, the language of the Plan), to ***determine the rights and status under the Plan*** of any Eligible Employees and other persons, to ***resolve questions or disputes arising under the Plan*** and to ***make any determinations with respect to the benefits hereunder*** and the persons entitled thereto as may be necessary for the purposes of the Plan. In furtherance of, but without limiting the foregoing, the Plan Administrator shall have the following specific authorities, which he or she shall discharge in his or her ***sole and absolute discretion*** in accordance with the terms of the Plan (as interpreted, to the extent necessary, by the Plan Administrator):
>
> > (a)  To resolve ***all questions or disputes arising under the provisions of the Plan as to*** any individual's entitlement to become an Eligible Employee or ***the occurrence of a Qualifying Termination***;

7

> (b) To determine the amount of benefits payable to any person under the Plan; and
>
> (c) To conduct the Claims Procedure specified in Section 5.3.
>
> All decisions of the Plan Administrator as to the facts of any case, as to the interpretation of any provision of the Plan or its application to any case, and as to any other interpretive matter or other determination or question under the Plan shall be ***final and binding on all parties*** affected thereby....

(Plan §5.1, AR51-52; emphasis added.)

The Plan has a two-level claims procedure. A participant makes an initial claim for Plan benefits to the Claims Administrator, as delegate of the Plan Administrator. (Plan §5.3(a), AR52; AR58.) If the Claims Administrator denies the claim (AR57-58), the participant may appeal to the Plan Administrator (Plan §5.3, AR52-53).

Here, the Claims Administrator denied Plaintiff's application for Plan benefits because Plaintiff's termination was not a "Qualifying Termination," but was due to her "failure to meet standards of job performance" (*see* Plan §2.1(j)(iv), AR47):

> Under ERISA, the federal law that governs the Plan, the administrator is required to administer the plan in accordance with its written provisions and terms, as interpreted by the administrator. We have carefully considered the information related to your claim, and applied the terms of the Plan to your request. We have determined that you are not eligible for severance benefits under the Plan and your request must be denied because you have not had a "Qualifying Termination." A "Qualifying Termination" does not include a termination for the following:
>
> • "Termination due to your failure to meet standards of job performance"
>
> The Plan provides severance benefits only in the event of a qualifying "Termination" of your employment, which is expressly defined on page 4 of the Plan.

(AR57.)

Plaintiff appealed to the Plan Administrator, who affirmed the denial of benefits, on the same ground:

> I have carefully considered the documents, records and other information related to Ms. Benzing's appeal and per provisions and terms of the Plan, have applied the terms of the Severance Plan to her request.
>
> For the reasons set out below, I have concluded that Ms. Benzing is not eligible for severance benefits under the USAA Severance Plan and I am affirming the decision to deny her request for Severance benefits.
>
> As was previously communicated, under the USAA Severance Plan, only a "Qualifying Termination" of employment entitles a participant to severance benefits. As outlined in the USAA Severance Plan, there are various terminations that are excluded from the Plan's definition of "Qualifying Termination."
>
> Among those excluded events is a "Termination due to your failure to meet standards of job performance".
>
> The decision reached represents the Plan's final decision and action with respect to Ms. Benzing's claim.

(SAR60.)

Plaintiff thereafter filed this civil action.

## LEGAL ARGUMENT

### I. Plaintiff's Benefit Claim Fails as a Matter of Law (First Claim for Relief).

#### A. The Deferential Abuse of Discretion Standard Applies.

The Plan could not be more emphatic about its grant of discretionary authority to the Plan Administrator. Accordingly, the abuse of discretion standard applies to the Court's review of the Plan Administrator's decision on Plaintiff's benefit claim. *See, e.g., Refaey v. Aetna Life Ins. Co.*, 467 F. Supp. 3d 328, 331-32, 339 (W.D.N.C. 2020) (Cogburn, J.) (holding abuse of discretion standard applies where plan grants "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe and disputed or doubtful terms") (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

"The abuse of discretion standard is the most deferential review standard in American jurisprudence." *Id.* at 339. Under the abuse of discretion standard, "the court may not substitute its

own judgment in place of the judgment of the plan administrator." *McGhee v. Aetna Life Ins. Co.*, 63 F. Supp. 3d 572, 579-80 (W.D.N.C. 2014) (Cogburn, J.) (internal quotation marks & brackets omitted). "[C]ourts will not disturb a plan administrator's decision if the decision is reasonable, even if they would have come to a contrary conclusion independently." *Refaey*, 467 F. Supp. 3d at 339 (internal quotation marks & court's brackets omitted).

In addressing the reasonableness of the plan administrator's decision, a court may consider these eight factors, first enumerated in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000):

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Refaey*, 467 F. Supp. 3d at 339 (quoting *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (quoting *Booth*, 201 F.3d at 342-43)). Consideration of the *Booth* factors is "not mandatory." *Millage v. B.V. Hedrick Gravel & Sand Co. Emp. Benefit Plan*, No. 10cv140, 2011 WL 4595999, at *5 (W.D.N.C. Sept. 30, 2011) (Cogburn, J.).

"[T]h[e] court's review is limited to the record that was before the plan administrator at the time of the final determination," *McGhee*, 63 F. Supp. 3d at 580, and "[t]he burden of proving an abuse of discretion rests with the plaintiff," *Innes v. Barclays Bank PLC Staff Pension Plan Comm.*, No. 15CV00018, 2017 WL 111787, at *6 (W.D. Va. Jan. 11, 2017), *aff'd*, 698 F. App'x 147 (4th Cir. 2017); *accord, e.g., Grabowski v. Hartford Life & Accident Ins. Co.*, No. 16-cv-01384, 2017 WL 6390963, at *6 (E.D. Va. Aug. 23, 2017), *aff'd*, 747 F. App'x 923 (4th Cir. 2018); *Martin v. Hartford Life & Accident Ins. Co.*, No. 12-2134, 2013 WL 5297146, at *3 (D. Md. Sept. 18, 2013);

*see also, e.g., Refaey*, 467 F. Supp. 3d at 346-47 (noting plaintiff "has the burden to prove that she is entitled to receive disability benefits under the Plan," and holding "plaintiff has failed to prove that Aetna's decision was unreasonable under the *Booth* factors").

Where the parties file cross-motions for summary judgment on the administrative record, it is appropriate for the Court to "treat[] the motions and the citations of evidence in the administrative record in the manner it would a bench trial": first considering "the evidence contained in the administrative record which Plaintiff has cited in h[er] favor and then considering the record evidence by Defendant." *McGhee*, 63 F. Supp. 3d at 580 (citing *Stewart v. Bert Bell/Pete Rozelle NFL Play Ret. Plan*, No. 09-2612, 2012 WL 122362 (D. Md. Jan. 12, 2012)).

### B. Plaintiff Cannot Prove the Plan Administrator Abused Her Discretion.

To prevail on her claim for Severance Pay, Plaintiff would have to prove the Plan Administrator abused her discretion in finding Plaintiff was terminated for her "failure to meet standards of job performance," and that consequently her termination from USAA was not a "Qualified Termination." (SAR60; Plan §2.1(j)(iv), AR47.) Plaintiff cannot do so.

#### 1. The Evidence Supporting the Plan Administrator's Decision Is Not Just Substantial, but Undisputed.

Under the abuse of discretion standard, a plan administrator's decision ***is upheld unless the plaintiff can show it was unsupported by "substantial evidence"***." *Refaey*, 467 F. Supp. 3d at 339 (emphasis added); *McGhee*, 63 F. Supp. 3d at 380. Plaintiff cannot make such a showing. "Substantial evidence" is merely "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *LeFebre v. Westinghouse Elec. Corp.*,

747 F.2d 197, 208 (4th Cir. 1984); *accord, e.g., Young v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-01469, 2019 WL 6833854, at *5 (S.D. W. Va. Dec. 13, 2019).

The administrative record containing information from Kirby and HR personnel consistently shows that Plaintiff's at-will employment was terminated after seven weeks and one day because Plaintiff was not satisfactorily performing and was pushing back against performing her job duties. Plaintiff lacked interest in her role at USAA and was not up to the job. When Kirby fired Plaintiff, she explained it was because "we don't have the confidence any longer that your interest is here in the role" or that Plaintiff had the "ability to deliver at the pace and quality level" required. (AR80, 85.) Plaintiff's personnel records likewise show Plaintiff was terminated for a "Loss of Confidence" and that she "Lack[ed] Judgment" (SAR70, 71); that she had shown an "inability to perform [her] role" (SAR73); that she had an "inability to transition" into her role (SAR6); that "Robin Kirby lost confidence in [Plaintiff's] ability to adequately engage and deliver at the required pace" (SAR6). The record likewise displays Plaintiff's negativity about her role. Plaintiff told Kirby of her "displeasure" with her work. (SAR6.) Kirby perceived that Plaintiff's work "did not interest her" and that she had a "lack of engagement" with it. (SAR6.)

Plaintiff essentially admits all this both in her application for benefits, and in her appeal of the initial denial. Plaintiff admits she lacked "deep subject matter expertise" in the tasks her role at USAA required. (AR89.) Plaintiff admits that she "had no prior experience" doing the work assigned to her (AR82), that "I do not have experience" and "nor do I have experience" (AR90). Plaintiff admits "my skills no longer aligned" with her role at USAA. (AR90.) Plaintiff even goes so far as to say "I would not have hired me." (AR90.) Likewise, Plaintiff admits "it is possible" Kirby might have interpreted her conduct as expressing "displeasure" with her work, that the work "did not energize" her (AR81), and that it "was not my biggest passion" (AR89).

This evidence is more than adequate for the Plan Administrator's finding that the termination was not a Qualifying Termination because it was a "[t]ermination due to [Plaintiff's] failure to meet standards of job performance." The "substantial evidence" standard is not high; it is merely evidence sufficient for a court to give the case to a jury rather than direct a verdict. *LeFebre*, 747 F.2d at 208; *Young*, 2019 WL 6833854, at *5. It is Plaintiff's burden to prove that substantial evidence, so defined, was ***absent*** from the administrative record. *See, e.g., Ayres v. Kyanite Mining Corp.*, No. 14-CV-0001, 2015 WL 4393991, at *5 (W.D. Va. July 16, 2015) ("The plaintiff bears the burden of demonstrating, based on the record evidence, that the Committee's decision was unreasonable and not supported by substantial evidence").

Plaintiff obviously cannot do that here, as the administrative record shows that in the eyes of USAA, Plaintiff's employer, she "fail[ed] to meet standards of job performance." The record is consistent that USAA found Plaintiff's performance substandard. It is the employer's assessment of an employee's performance that counts, not the employee's. *See, e.g., Moser's v. Driller's Service, Inc.*, 988 F. Supp. 2d 559, 564 n.10 (W.D.N.C. 2013) ("In evaluating performance, 'it is the perception of the decision maker which is relevant'") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)); *Moore v. Wal-Mart Stores E., LP*, No. 16-cv-362, 2018 WL 401544, at *7 (W.D.N.C. Jan. 12, 2018) (Cogburn, J.) ("In determining whether plaintiff was performing his job satisfactorily, '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff'") (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). But here, Plaintiff's own view of her performance aligns with USAA's – that, in the words of the Plan, she was terminated because of her "failure to meet standards of job performance," disqualifying her from receiving Plan benefits. *See* Plan §2.1(j)(iv) ("Qualifying Termination" does "**not** include ... Termination due to the failure to meet standards of job performance") (AR47).

Thus, the evidence is not only *substantial* that Plaintiff failed to "meet standards of job performance," which is all the abuse of discretion standard requires, but *undisputed*. The Plan Administrator accordingly did not abuse her discretion in denying Plaintiff Severance Pay under the Plan. On the contrary, the administrative record shows that awarding Plaintiff benefits would have been an abuse of discretion. The Plan Administrator made the only decision she could, and the Court should therefore grant the Plan summary judgment and dismiss Plaintiff's First Claim for Relief with prejudice.

### 2. The *Booth* Factors Further Support the Plan Administrator's Decision.

Although "consideration of the *Booth* factors is not mandatory," *Millage*, 2011 WL 4595999, at *5, they further support the Plan Administrator's decision.

<u>1. The language of the plan.</u> The Plan prohibits the award of benefits to participants who were terminated "due to the failure to meet standards of job performance." (Plan §2.1(j)(iv), AR47.) As discussed in the preceding section, Plaintiff failed to meet standards of job performance. The Plan Administrator was consequently required to deny her benefits. *See, e.g., Refaey*, 467 F. Supp. 3d at 340 ("A prudent claims administrator is charged with the responsibility of both honoring valid claims as well as denying invalid claims"); 29 U.S.C. §1104(a) (subjecting fiduciaries to the "[p]rudent man standard of care").

<u>2. The purposes and goals of the plan.</u> Section 1.2 of the Plan is entitled "Purpose" and states: "The purpose of the Severance Plan is to ease the economic stress of loss of employment with the Employer by providing Eligible Employees with Severance Pay *as hereinafter set forth*." (AR45; emphasis added.) As the highlighted clause indicates, the general language of §1.2 is construed in light of the rest of the Plan, which expressly limits the award of Severance Pay to participants whose termination was a "Qualifying Termination," and excludes from the definition

of Qualifying Termination "Termination due to the failure to meet standards of job performance." (Plan §2.1(j)(iv), AR47; Plan §4.1, AR48.) *See, e.g., Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013) ("ERISA plans, like contracts, are to be construed as a whole"). Thus, it serves the purpose and goals of the Plan to deny benefits to a participant who, like Plaintiff, was terminated "due to the failure to meet standards of job performance."

3. The adequacy of the materials considered to make the decision and the degree to which they support it. There is no evidence the materials considered were inadequate. On the contrary, Plaintiff submitted a lengthy, 10-page, single-spaced initial application for benefits (AR85-94), and her attorney submitted an even longer letter in support of her appeal – 13 pages, single-spaced (AR71-83). As discussed above, Plaintiff's own submissions confirm the rest of the administrative record, demonstrating the Plan Administrator did not abuse her discretion in denying Plaintiff benefits on the ground she had been terminated "due to the failure to meet standards of job performance." *See, e.g., Zeckoski v. Elsevier, Inc.*, No. 19-CV-349, 2021 WL 5356494, at *8 (W.D.N.C. Sept. 29, 2021) (granting defendant summary judgment in severance plan case, and with respect to third *Booth* factor noting that plaintiff's "admission in his Complaint in separate, unrelated litigation – that is part of the Administrative Record in this case – is particularly revealing and provides more than the 'scintilla' of evidence necessary for the Court to find here that the Committee's determination was supported by substantial evidence"), *adopted*, 2021 WL 5355928 (W.D.N.C. Nov. 16, 2021).

4. Whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan. As already discussed, the Plan Administrator's interpretation was consistent with the Plan's provisions, which the Administrator has discretion to interpret and apply. There is nothing in the administrative record about earlier interpretations of

the Plan. This case is thus analogous to *Refaey*, where the Court held with respect to the fourth *Booth* factor:

> Aetna's decision is consistent with the pertinent Plan provisions. Aetna is afforded discretion to make decisions of benefit eligibility under the Plan definition of "disability." The record contains no evidence of any inconsistencies between Aetna's decision and any previous interpretations of the Plan. Thus, application of this factor weighs in favor of finding that Aetna's decision was reasonable.

*Refaey*, 467 F. Supp. 3d at 343.

5. Whether the decision-making process was reasoned and principled. Plaintiff's benefit claim required nothing more than the application of the Plan's language to the simple facts underlying Plaintiff's termination, about which Plaintiff and USAA did not disagree. There is accordingly "no evidentiary basis to suggest that the adequacy of the materials considered to make the decision was insufficient or that the decision-making process was unreasoned and unprincipled." *Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Executives*, 182 F. Supp. 3d 573, 604 (E.D. Va. 2016), *aff'd*, 875 F.3d 160 (4th Cir. 2017); *see also, e.g., Murphy v. Int'l Painters & Allied Trades Indus. Pension Fund*, No. 13-cv-28760, 2015 WL 13746658, at *15 (S.D. W. Va. Apr. 6, 2015) (fifth *Booth* factor satisfied where fund administrator and trustees (i.e., claims administrator and plan administrator) "applied the pertinent plan language to the relevant evidence contained in Plaintiff's administrative file at both stages of the review process"; they "were not required to adopt Plaintiff's view"), *adopted*, 2015 WL 5722809 (S.D. W. Va. Sept. 29, 2015).

6. Whether the decision was consistent with the procedural and substantive requirements of ERISA. All ERISA requires is that "plan participants be notified in writing of any benefit denial, and that they be given an opportunity for a full and fair hearing by those denying the claim." *Refaey*, 467 F. Supp. 3d at 346. That is guaranteed by the Plan (*see* Plan §5.3, AR 52-53) and is

exactly what happened here (AR57-58, AR71-83, SAR60). The Plan Administrator "carefully reviewed Plaintiff's claim and accepted all evidence she elected to present in support of her claim, and issued a written decision explaining the reasoning underlying the denial of benefits." *Refaey*, 467 F. Supp. 3d at 346.

7. Any external standard relevant to the exercise of discretion. Just as in *Refaey*, here "there is no additional external standard of review relevant to [the Plan Administrator's] exercise of discretion. [Her] discretionary authority is established by the Plan language and the relevant case law cited above." *Refaey*, 467 F. Supp. 3d at 346.

8. The fiduciary's motives and any conflict of interest it may have. The Plan provides that USAA "shall pay Severance Pay from its current operating funds." (Plan §3.1, AR48.) Plaintiff must show this gave rise to a conflict by the Plan Administrator that affected the Plan Administrator's decision. There isn't any. *See, e.g., Griffin v. Hartford Life & Accident Ins. Co.*, 898 F.3d 371, 383 (4th Cir. 2018) (Since "in this case, there is no evidence that any such conflict impacted Hartford Life's adjustment and review of Griffin's claim," the "structural conflict, alone, is not sufficient to render Hartford Life's entire decisionmaking process unreasonable"); *Zeckoski*, 2021 WL 5356494, at *7 n.2 (Court "will not proceed with analysis on this [eighth *Booth*] factor. Plaintiff has offered nothing more than an assertion that a structural conflict exists because RELX was responsible for both evaluating and paying claims under the Plan. But, while this conflict 'may exist, there is no evidence in the record that [the Committee's] decision was influenced by a conflict ... and Plaintiff ... has not presented any evidence in this regard'") (quoting *Refaey*, 467 F. Supp. 3d at 346; court's brackets & ellipses; other internal quotation marks omitted).

Accordingly, the Plan Administrator's decision is supported by all eight of the *Booth* factors. For that reason alone, Plaintiff's benefit claim fails as a matter of law. But it is not alone,

because, as discussed above, the Plan Administrator's decision was also supported by "substantial evidence." That is an independently sufficient reason that Plaintiff's benefit claim fails. The Court should therefore grant the Plan summary judgment and dismiss the First Claim for Relief with prejudice.

## II. Plaintiff May Not Receive an Award of Attorney's Fees and Costs (Second Claim for Relief).

The Second Claim for Relief seeks attorney's fees and costs under ERISA §502(g)(1), 29 U.S.C. §1132(g)(1). Under that provision, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). Though this does not expressly require the fee applicant to be successful in the litigation, the Supreme Court nevertheless holds that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under §1132(g)(1). A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y]'"; rather, it must be possible for the court to "fairly call the outcome of the litigation some success on the merits" for the fee applicant. *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 255 (2010).

Here, the outcome will be precisely the opposite of "success" because Plaintiff's benefit claim fails as a matter of law. Therefore, under *Hardt*, she is not entitled to fees and costs under ERISA §502(g)(1). *See Zeckoski*, 2021 WL 5356494, at *13 (Since magistrate judge is "recommending that summary judgment be granted for Defendants on each of Plaintiff's claims under ERISA," it is "evident that Plaintiff has not shown any degree of success on the merits" and "Plaintiff's claim for section 502(g) attorneys' fees [should] be denied"). The Court should accordingly grant the Plan summary judgment on the Second Claim for Relief as well as the First, and it should likewise be dismissed with prejudice.

## CONCLUSION

The evidence is not just substantial but undisputed that Plaintiff was terminated from her employment with USAA "due," according to the language of the USAA Officer Severance Plan, "to the failure to meet standards of job performance." As a result, the Plan Administrator could not have abused her discretion in finding that Plaintiff's termination was not a "Qualifying Termination," and that Plaintiff was consequently precluded by the Plan's plain language from receiving an award of benefits. The Court should therefore grant the Plan summary judgment on Plaintiff's benefit claim under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), and dismiss the First Claim for Relief with prejudice.

Because Plaintiff's substantive ERISA claim fails, so does her claim for attorney's fees and costs under ERISA §502(g)(1), 29 U.S.C. §1132(g)(1). The Court should therefore grant the Plan summary judgment on that claim as well, and dismiss the Second Claim for Relief with prejudice.

In sum, Plaintiff's claims fail on the administrative record as a matter of law and the Court should grant the Plan summary judgment, dismissing the Complaint with prejudice.

Filed: November 12, 2022                    Respectfully submitted,

/s/ Kevin J. Dalton
Kevin J. Dalton (NC Bar No. 24197)
**FISHER PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: kdalton@fisherphillips.com
ATTORNEY FOR DEFENDANT

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:22-cv-00146-MOC-DSC**

| | |
|---|---|
| LISA BENZING, | ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| USAA OFFICER SEVERANCE PLAN, | ) ) |
| Defendant. | ) ) |
| _____ | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2022, **DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel, Bryan L. Tyson and Hannah Auckland, via email to bryan@yourncattorney.com and hauckland@yourncattorney.com.

        Respectfully submitted,

        /s/ Kevin J. Dalton
        Kevin J. Dalton
        **FISHER & PHILLIPS LLP**