UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00146-MOC-DSC

| LISA BENZING, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S REPLY IN SUPPORT** |
| vs. | ) | **OF SUMMARY JUDGMENT** |
| | ) | |
| USAA OFFICER SEVERANCE PLAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

Plaintiff was terminated, after a mere seven weeks of employment with United Services Automobile Association ("USAA"), "due to the failure to meet standards of job performance," which disqualified her for USAA Officer Severance Plan ("Plan") benefits. There is no *genuine* dispute about this, as indicated by Plaintiff's own admissions in the Administrative record: that she **lacked "passion"** for her job, which **did not "energize"** her (AR89, 81); and "in full transparency, **I would not have hired me** to do the role . . .." (AR90).

Because Plaintiff's "failure to meet standards of job performance" is not in genuine dispute, the Plan Administrator's decision denying her Plan benefits (or "Severance Pay") was correct, her civil action seeking benefits under the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA"), fails as a matter of law, and the Court should grant the Plan summary judgment, deny Plaintiff summary judgment, and dismiss the Complaint, in its entirety, with prejudice.

# ARGUMENT

**I.  There Is No Genuine Dispute that Plaintiff's Termination from USAA, After Just Seven Weeks of Employment, Was "Due to the Failure to Meet Standards of Job Performance."**

Plaintiff began working for USAA on September 30, 2019, as Vice President for Talent Development, and was fired just seven weeks later, on November 19, 2019. (Compl. ¶¶10, 12; SAR77.[1]) Plaintiff thereafter filed a claim for Severance Pay under the Plan, which first the Claims Administrator and then the Plan Administrator rejected because Plaintiff's termination was "due to your failure to meet standards of job performance," which disqualified Plaintiff from receiving Severance Pay. (AR57, 182.[2]) There is no dispute that "Termination due to the failure to meet standards of job performance" disqualified Plan participants like Plaintiff from receiving Severance Pay. (Plan §2.1(j)(iv), AR47; *id.* §4.1, AR48.[3]) There is also no *genuine* dispute that Plaintiff was terminated due to the failure to meet standards of job performance.

USAA invested a significant amount of time recruiting Plaintiff, according to her "several months," during which Plaintiff says she interviewed with about a dozen people, both remotely and in person. (AR72, 73, 85.) USAA also invested, as Plaintiff says, "significant company expense" (AR76), spending just short of $75,000 on her relocation from Charlotte, North Carolina, to San Antonio, Texas ($74,676.06, to be exact) (SAR8-16). No company would expend so many

---

[1] "SAR" (short for "USAA SUPP AR") refers to the bates numbers of the pages in those portions of the Administrative Record filed by the Plan at DE18.

[2] "AR" refers to the bates numbers of the pages in those portions of the Administrative Record filed by Plaintiff at DE14.

[3] The Plan provides that "[i]n the event of a Qualifying Termination, the Plan Administrator will determine the Severance Pay, if any, to be provided to any Employee or Group of Employees." Plan §4.1 (AR48). "[T]he term 'Qualifying Termination' shall **not** include," among other things, "Termination due to the failure to meet standards of job performance." Plan §2.1(j)(iv) (Plan's emphasis) (AR47).

hours of time and so many tens of thousands of dollars hiring an officer, and then fire her after a mere matter of weeks, unless the company had concluded she had "fail[ed] to meet standards of job performance."

The Administrative Record is also clear that the Plan Administrator had evidence before her indicating that Plaintiff was terminated because she failed to meet standards of job performance. For example, information provided to the Plan Administrator indicated:

> Lisa Benzing (EID: Y9976) was hired as the VP, Talent Development, effective 09/30/19. Throughout several onboarding meetings with her direct leader (SVP, Talent - Robin Kirby, EID: U4209) and others in the HR function, Lisa shared her displeasure that the focus of the role would involve a significant percentage of her time on Learning & Development. Although the work did not interest her, it was part of the full scope of the role she was hired to perform (was called out in job description and job posting detail) and part of the experience she had from prior roles (though admittedly at a different altitude). In the week prior to her separation, Lisa's relationship with Robin became so tenuous – as described by Lisa – that she refused to continue meeting with Robin, stopped coming in the office, and missed several meetings without notice. Because of this lack of engagement, lack of accountability for the full portfolio of work she was hired to deliver, and inability to transition into acceptance mode on the scope and urgency on the Learning work, Robin Kirby lost confidence in Lisa's ability to adequately engage and deliver at the required pace. As such, Robin Kirby made the decision to terminate Lisa's employment effective 11/19/19 for loss of confidence/lack of judgment.

SAR06. *See also* SAR01; SAR28; SAR37. Plaintiff, through her former counsel Erin Ball, was expressly notified that this evidence was considered in the denial of benefits. *See* SAR 35-37. There is evidence throughout the Administrative Record in support of the Plan Administrator's decision. *See, e.g.,* SAR70 ("Loss of Confidence"); SAR71 (indicating Plaintiff's termination was "Involuntary>Loss of Confidence/Lack of Judgment," and "Loss of confidence due to inability to perform"); SAR73 ("Loss of Confidence/Lack of Judgment"; "involuntary termination: inability to perform role"); *see* SAR6, 37 ("Separation summary on Lisa Benzing," noting Plaintiff's "displeasure" and lack of "interest" in her work; "tenuous" relationship with Kirby; "lack of engagement"; "lack of accountability"; "inability to transition into acceptance" of her duties; and

3

Kirby's "lost confidence in Lisa's ability to adequately engage and deliver"). In Plaintiff's own application for benefits to the Plan's Claims Administrator (*see* Plan §5.3, AR52), Plaintiff admitted that her supervisor, Robin Kirby, the decisionmaker in her termination, told Plaintiff at her termination meeting that she was being terminated because: "We just feel that we don't have the confidence any longer that your interest is here in the role and that your ability to deliver at the pace and the quality level that is going to be required as we go forward is going to be there." (AR80, 85.)

Plaintiff's own submissions to the Claims Administrator and then the Plan Administrator – which she intended as *support* for her benefit claim – echo USAA's assessment:

- Plaintiff admitted to a lack of interest in her job:
    - "not my biggest passion" (AR89);
    - "did not energize" her (AR81);
    - Plaintiff's conduct might be seen as "displeasure" with her work (AR81).

- Plaintiff admitted Kirby warned her about "mentally looking for timelines regarding doing the work that's fun for you" (AR89);

- Plaintiff admitted to a lack of experience:
    - Plaintiff "had no prior experience" with the work she was assigned (AR82);
    - "not my ... area of deep subject matter expertise" (AR89);
    - "wasn't my area of deep subject matter expertise" (AR89);
    - "I do not have experience" (AR90);
    - "nor do I have experience" (AR90).

- Plaintiff admitted that "in full transparency, I would not have hired me to do the role as Robin [Kirby] has since defined it" (AR90).

Plaintiff's arguments opposing summary judgment must be evaluated in light of this undisputed evidence. Plaintiff wants the Court to disregard her admissions and other information provided in the Administrative Record supporting the Plan Administrator's decision denying her benefits. But nothing requires the Court to cherry-pick only the information Plaintiff wants

considered. Nothing requires the Court (and nothing required the Plan Administrator) to blind itself to the evidence that Plaintiff was manifestly in over her head (and knew it), repeatedly pushed back on the job duties while demanding easier duties instead, and was so bad at her job that USAA terminated her employment after just seven weeks.

Plaintiff's repeated refrain that she was fired <u>solely</u> for "missing meetings" is, to say the least, false and without evidentiary support. Furthermore, these missed meetings are a red herring. Plaintiff points to providing information to the Plan Administrator concerning irrelevant meetings she purportedly attended on November 11 to November 14. Plaintiff's brief states, "During Plaintiff's final week at work, Plaintiff met with Ms. Kirby **six times** for work meetings. Dkt.#19-1, pp. 15-16 (listing all meetings)." DE19-1, p.15. These meetings are identified as two meetings on November 11, 2019, three meetings the day Plaintiff was notified her employment was being ended on November 12, 2019, and one meeting on November 14, 2019. *Id.*

Benzing's timeline is off. Benzing was notified by Jamie Wetherell on November 12, 2019, that the decision had been made to end her employment. (DE29-1, Declaration of Jamie Wetherell, ¶5). Thus, calendar entries for purported meetings Benzing said she had with Robin Kirby on November 11, November 12, and November 14 (the day Benzing flew from Texas to North Carolina without authorization) are irrelevant. It's the wrong week. Plaintiff provided irrelevant information about the wrong week as part of her appeal, and Plaintiff has continued to assert information about missed meetings during the wrong week throughout her briefs regarding summary judgment. Plaintiff's termination was not a qualifying termination under the Plan because Plaintiff failed to meet standards of job performance. This failure was not just because of the meetings she skipped.

Plaintiff argues that "[t]he administrative record is devoid of any write-ups, poor performance reviews, corrective behavior statements, or *anything* that would indicate that Plaintiff 'failed to meet standards of job performance.'" (Pl's Opp'n Br., DE26, at 12)  The absence of writeups, performance reviews, and corrective actions simply reflects the fact that Plaintiff was such a bad employee that USAA deemed her a lost cause after just six weeks.[4]  It was immediately obvious she was unwilling to perform her job duties, monumentally wasteful of her superiors' time in her constant demands for different job duties that would be more to her liking.  It simply would not have been worth it to continue paying Plaintiff's six figure salary merely to buy enough time to formally document her failures as an employee.

The latter part of Plaintiff's assertion, that there is not "*anything* [in the Administrative Record] that would indicate that Plaintiff 'failed to meet standards of job performance'" is frivolous; as shown above, the record is replete with evidence demonstrating her failure, including her own admissions.

Plaintiff's argument that there were "drastic changes" to her job duties during her weeks-long tenure (e.g., Pl.'s Opp'n Br., DE26, at 9.) makes no sense.  Plaintiff was not employed long enough for drastic, or indeed any, changes to her job duties.  Indeed, Plaintiff's summary judgment brief states she began employment on September 30, 2019, and just three days later (still during the onboarding process) on Thursday, October 3, she had a meeting with her supervisor, Robin Kirby, where Ms. Kirby walked Benzing through her job duties. *See* DE19-1, pp.3-4.  Plaintiff

---

[4] As mentioned above, Plaintiff was notified on November 12, 2019, six weeks after she began working, that USAA had made the decision to end her employment.  Plaintiff then unexpectedly flew from Texas to North Carolina without authorization on November 14, 2019.  Plaintiff was notified on November 19, 2019, that her employment was terminated effective that day. (Wetherell Decl., DE29-1, ¶¶5, 7, 8.)

6

characterizes this as a "drastic change" to her duties. The timing shows these were the first duties assigned.

Plaintiff's summary judgment response brief indicates she had conversations with others over the next weeks to the effect that she thought her duties would be different. (*See* DE26, pp.9-10). This does not help Plaintiff's argument. The Plan says a participant is disqualified from benefits if her termination is "due to the failure to meet standards of job performance" (Plan §2.1(j)(iv), AR47), not "due to the failure to meet standards of tasks the participant wants to perform." What this line of argument does show, however, is that Plaintiff was continuously complaining about the duties assigned to her because she did not want to perform such duties.

Moreover, as the Plan has already observed, even in the wrongful termination context, it is the employer's assessment of an employee's performance that counts, not the employee's. *See, e.g., Moser's v. Driller's Service, Inc.*, 988 F. Supp. 2d 559, 564 n.10 (W.D.N.C. 2013) ("In evaluating performance, 'it is the perception of the decision maker which is relevant'") (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)); *Moore v. Wal-Mart Stores E., LP*, No. 16-cv-362, 2018 WL 401544, at *7 (W.D.N.C. Jan. 12, 2018) (Cogburn, J.) ("In determining whether plaintiff was performing his job satisfactorily, '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff'") (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). It is patent throughout the Administrative Record and wholly undisputed that USAA assessed Plaintiff as having failed to meet standards of job performance, and that the company fired her for that very reason.

Plaintiff also believes she has a case-winning argument arising from USAA's payment to her of $560,000 under the Sign-On Bonus Agreement. (AR4-5.) This issue has been discussed at length in the Plan's prior briefing. Two points bear repeating here. First, information relating to

the sign-on bonus payments is not in the Administrative Record. As a result, even if the de novo standard of review applied here rather than the more deferential abuse of discretion standard, information about the bonus payments would be inadmissible, among other reasons because Plaintiff has failed to "demonstrate a persuasive reason why [s]he failed to present the [information] during the administrative appeal" to the Plan Administrator. *Shupe v. Harford Accident & Life Ins. Co.*, 19 F.4th 697, 705 (4th Cir. 2021). (For a full discussion, *see* Def.'s Exclusion Mem., DE28; Puchot Decl., DE28-1, Wetherell Decl., DE28-2.)

Second, even assuming the admissibility of information relating to the $560,000 in bonus payments, all three installments of it were paid *after* Plaintiff's termination, in contravention of the plain language of the Sign-On Bonus Agreement, which required Plaintiff to be employed on the dates the payments were scheduled to be made. (*See* AR1, 4; Def.'s Opp'n Mem., DE29, at 1-2, 12-14; Wetherell Decl., DE29-1.) The undisputed evidence also shows the installments were paid due to bureaucratic oversight, as their payment had been contemplated only as a component of a separation agreement and release negotiated between Plaintiff and USAA. Plaintiff never informed USAA she was rejecting it, but rather just failed to return the signed agreement on December 27, 2019, the last day of the review period, received the payments on January 9, 2020, and failed to return the payments. (*See* Def.'s Opp'n Mem., DE29, at 1-2, 12; Wetherell Decl., DE29-1, ¶¶12-16.) Plaintiff was perfectly happy to take advantage of USAA's error and unjustly enrich herself by more than half a million dollars, but apparently doesn't think she's been sufficiently enriched for less than seven weeks of work.

There is, to repeat, no *genuine* dispute that Plaintiff was terminated "due to failure to meet standards of job performance," which disqualified her for benefits under Plan. (Plan §§2.1(j), 4.1, AR47, 48.) That means Plaintiff's strenuous efforts to convince the Court to apply the de novo

8
Case 3:22-cv-00146-MOC-SCR   Document 33   Filed 12/23/22   Page 8 of 20

standard of review rather than the abuse of discretion standard are essentially pointless. Under the de novo standard, the court makes its "'own independent determination of whether [Plaintiff] was entitled to [] benefits' under the ERISA plan. Such a standard concerns '[t]he correctness, not the reasonableness, of [the Defendant's] denial of [] benefits.'" *Zeckoski v. Elsevier, Inc.*, No. 19-CV-349, 2021 WL 5356494, at *4 (W.D.N.C. Sept. 29, 2021) (quoting *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013)), *adopted*, 2021 WL 5355928 (W.D.N.C. Nov. 16, 2021); *accord, e.g., Shupe*, 19 F.4th at 706. The Plan Administrator's finding that Plaintiff's termination had been "due to the failure to meet standards of job performance" was correct, for the simple but compelling reason that it is the only finding supported by the record. Plaintiff's burden in opposing summary judgment was to "affirmatively demonstrate that that there is a genuine issue of material fact which requires trial." *Millage v. B.V. Hedrick Gravel & Sand Co. Emp. Benefit Plan*, No. 10cv140, 2011 WL 4595999, at *3 (W.D.N.C. Sept. 30, 2011) (Cogburn, J.) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Here, there is no evidence at all that could justify a verdict for Plaintiff, because the only evidence in the record is that her termination was a "Termination due to the failure to meet standards of job performance." Therefore, even under the de novo standard that Plaintiff insists on, the Court should deny Plaintiff's motion for summary judgment, grant the Plan's, and dismiss the Complaint, in its entirety, with prejudice.

## II. The Deferential Abuse of Discretion Standard Applies Here.

The abuse of discretion standard applies here, "the most deferential review standard in American jurisprudence." *Refaey v. Aetna Life Ins. Co.*, 467 F. Supp. 3d 328, 339 (W.D.N.C. 2020)

(Cogburn, J.). (*See* Def.'s S.J. Mem., DE23, at 9-10.) That results from the Plan's extensive language granting the Plan Administrator broad discretionary authority. (Plan §2.1(j), AR47; Plan §5.1 (entire text), AR51-52; *see* Def.'s S.J. Mem., DE23, at 7-8.) *See Refaey*, 467 F. Supp. 3d at 331-32, 339 (holding abuse of discretion standard applies where plan grants administrator "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe and disputed or doubtful terms") (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Plaintiff makes two arguments that the de novo standard should apply instead. First, Plaintiff argues the Plan Administrator was not the Plan Administrator, an argument Plaintiff also made in her own summary judgment motion and is no more serious in her opposition. Second, Plaintiff argues the Plan Administrator's purported errors with respect to the claims procedure regulation, 29 C.F.R. §2560.503-1, preclude application of the abuse of discretion standard. For that, Plaintiff relies on out-of-circuit case law and U.S. Department of Labor commentary, which are contrary to Fourth Circuit law.

### A. Plaintiff's Contention that the Plan Administrator Was Not the Plan Administrator Is Still Without Merit.

Plaintiff repeats her argument that the Plan Administrator, who made the final decision denying her benefit claim, was not the real Plan Administrator, but some sort of imposter masquerading as the Plan Administrator. Plaintiff's argument has been rebutted at length in the Plan's opposition to Plaintiff's summary judgment motion. (Def.'s Opp'n Mem., DE29, at 5-7; Delegation & Appointment of Auth. of Plan Adm'r Functions, DE29-2.) To reiterate the key points, the Plan has a two-step claim procedure. First, a participant makes a claim for benefits to the Claims Administrator. (Plan §5.3, AR52.) If the Claims Administrator grants the claim, that is the end of the story. If the Claims Administrator denies the claim, the participant "may request the

Plan Administrator to review a claim denial by filing a written request for review." (Plan §5.3(b), AR53.)

This procedure was followed to the letter in Plaintiff's case. She made an initial claim for Plan benefits on or about December 23, 2019. (AR85-94.) Her claim was denied by "Marcel Menendez, Claims Administrator, USAA Severance Plan" in a March 16, 2020 letter. (AR57-58.) The letter informed Plaintiff she could "appeal this denial to the Plan Administrator ... at the following address: Plan Administrator, USAA Severance Plan, 9800 Fredericksburg Road, C-3-E, San Antonio, TX 78288." (AR57.)

On April 13, 2020, Plaintiff sent Menendez an e-mail, cc'ing her attorney, which informed Menendez that she planned to appeal and asked him to "provide a name and contact of the assigned Plan Administrator." (SAR26.) On April 22, 2020, Menendez replied, providing Plaintiff with the same Plan Administrator address as he had in the March 16 denial letter. (SAR27.)

On November 17, 2020, Plaintiff's attorney filed a lengthy appeal letter with almost 100 pages of additional documentation. (AR71-181.) The appeal was addressed to "Plan Administrator, USAA Severance Plan, 9800 Fredericksburg Road, C-3-E, San Antonio, TX 78288." (AR71.)

On January 29, 2021, a letter was issued to Plaintiff affirming the Claims Administrator's denial of Plaintiff's claim for Plan benefits. (AR182-83.) The sender's address on the letter was "9800 Fredericksburg Road, San Antonio, Texas 78288." (AR181.) The letter was signed "**Jeanne Hertz, Vice President, Human Resources, Plan Administrator, USAA Severance Plan**." (AR182; emphasis added.) The letter said, "The decision reached represents the Plan's final decision and action with respect to Ms. Benzing's claim." (AR181.) The Plan states, "All decisions of the Plan Administrator as to the facts of any case ... shall be final and binding on all parties

affected thereby." (Plan §5.1 final ¶, AR52.)

Finally, the Plan submitted with its opposition papers a copy of the Delegation and Appointment of Authority of Plan Administrator Functions, signed by Patricia Teague, Executive Vice President, Human Resources, and appointing Jeanne Hertz "to serve as Plan Administrator in administering and managing the Plans," including the USAA Officer Severance Plan, "effective as of August 20, 2019." Included in the delegation and appointment were the "authority, rights, powers and duties: ... (4) To determine all questions arising under the Plans, including the questions regarding the rights or eligibility of employees and former employees, and the respective benefits of the Participants and others entitled thereto[.]" (DE29-2.)[5]

### B. Alleged Errors with Respect to the Claims Procedure Regulation Do Not Preclude Application of the Abuse of Discretion Standard.

Plaintiff offers a bulleted list of seven alleged instances where the Claims Administrator or Plan Administrator did not comply with the claims procedure regulation, 29 C.F.R. §2560.503-1, saying she discussed them in her summary judgment motion (Pl.'s Opp'n Br., DE26, at 4-5). Plaintiff did discuss six of them in her summary judgment motion, and the Plan has responded at length in its opposition (see citations in footnote[6]).

Plaintiff's new allegation, in her sixth bullet point, is that the Claims Administrator failed to comply with 29 C.F.R. §2560.503-1(f)(1)'s 90-day deadline to notify Plaintiff of his adverse benefit determination. That's just wrong. Plaintiff made her claim for benefits to the Claims

---

[5] Jeanne Hertz was the Plan Administrator at all times relevant to Plaintiff's claim for benefits. Julie Puchot is the current Plan Administrator as indicated in her declaration at DE28-1 following Jeanne Hertz's retirement. There is no contrary evidence.

[6] As to the first bullet point, *see* Def.'s Opp'n Mem., DE29, at 16-17 & n.6. As to the second, *see id.* at 18. As to the third, *see id.* at 10, 18-19. As to the fourth, *see id.* at 19-20. As to the fifth, *see id.* at 20. Plaintiff has not previously raised the assertion in the sixth bullet point, which the Plan addresses in the main text, above. As to the seventh bullet point, *see id.* at 19-20.

Administrator on December 23, 2019. (AR85.) The Claims Administrator notified Plaintiff of the denial of her claim less than 90 days later, on March 16, 2020 (AR57.) Plaintiff doesn't like the content of the notification, but that doesn't make it untimely.[7]

Plaintiff next argues that any noncompliance with 29 C.F.R. §2560.503-1 automatically results in the court's application of the de novo rather than abuse of discretion standard. To support that contention, she relies on out-of-circuit case law, which of course is not controlling, and the U.S. Department of Labor's preamble to the regulation in the Federal Register, which is likewise not controlling. *See, e.g., Mejia-Velasquez v. Garland*, 26 F.4th 193, 202 (4th Cir. 2022) (noting "a regulatory preamble does not control the meaning of the regulation" and "a preamble cannot be read to require more than the regulation requires") (internal quotation marks omitted).

Fourth Circuit law is that noncompliance with §2560.503-1 is not even an abuse of discretion, in the absence of proof the plan participant was prejudiced. *See, e.g., Cannon v. Charter Commc'ns Short Term Disab. Plan*, No. 18-CV-041, 2019 WL 235325, at *7 (W.D.N.C. Jan. 16, 2019) (no abuse of discretion where "even if" defendant violated §2560.503-1, "such a violation was not prejudicial") (citing *Worsely v. Aetna life Ins. Co.*, 780 F. Supp. 2d 397, 406-07 (W.D.N.C. 2011)); *Potter v. Shoney's, Inc.*, 108 F. Supp. 2d 489, 495 (M.D.N.C. 1999) (where "the record contains no evidence that Plaintiff has been prejudiced by these procedural violations and Plaintiff does not allege prejudice or harm as a result of the procedural deficiencies," the "technical violations" she complains of "do not constitute an abuse of discretion"); *Arnold* ex rel. *Hill v. Hartford Life Ins. Co.*, 542 F. Supp. 2d 471, 480 (W.D. Va. 2008) (having "found that the plaintiff failed to demonstrate prejudice from this possible procedural error," the court "concludes that there

---

[7] The Plan has already responded to Plaintiff's objection to the content at Def.'s Opp'n Mem., DE29, at 16-17 & n.6.

are no procedural irregularities which could indicate that Hartford's decision is inconsistent with the requirements of ERISA"); *Giles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 12-634, 2013 WL 6909200, at *15 (D. Md. Dec. 31, 2013) ("Unless a party can show a 'causal connection between [an ERISA procedural defect] and the final denial of a claim,' there can be no abuse of discretion based on a violation of 29 C.F.R. §2560.503-1") (quoting *Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 296-97 (4th Cir. 2006)); *Donnell*, 165 F. App'x at 297 ("[W]e will not find an abuse of discretion based on ERISA procedural violations absent 'a causal connection between [procedural defects] and the final denial of a claim'") (quoting *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 238 (4th Cir. 1997)); *Odle v. UMWA 1974 Pension Plan*, 777 F. App'x 646, 650 (4th Cir. 2019) ("'[N]ot all procedural defects will invalidate a plan administrator's decision.' Therefore, we must determine if 'a causal connection' exists between the procedural defect and the denial of Ms. Odle's claim") (quoting *Ellis*, 126 F.3d at 235, 238).

The Plan has already shown in its opposition to Plaintiff's summary judgment motion that she suffered no prejudice due to any alleged noncompliance. (Def.'s Opp'n Mem., DE29, at 15-18, 19-20.) There has, accordingly, been no abuse of discretion, let alone any reason to apply the de novo standard of review rather than the abuse of discretion standard.

### III. There Is No Evidence the Plan Administrator Abused Her Discretion.

"The burden of proving an abuse of discretion rests with the plaintiff." *Innes v. Barclays Bank PLC Staff Pension Plan Comm.*, No. 15CV00018, 2017 WL 111787, at *6 (W.D. Va. Jan. 11, 2017), *aff'd*, 698 F. App'x 147 (4th Cir. 2017); *accord, e.g., Grabowski v. Hartford Life & Accident Ins. Co.*, No. 16-cv-01384, 2017 WL 6390963, at *6 (E.D. Va. Aug. 23, 2017), *aff'd*, 747 F. App'x 923 (4th Cir. 2018); *see also, e.g., Refaey*, 467 F. Supp. 3d at 346-47 (noting plaintiff "has the burden to prove that she is entitled to receive disability benefits under the Plan").

Plaintiff's claim fails under the de novo standard.  It follows, therefore, that it fails under the abuse of discretion standard, which is deferential to the Plan Administrator's decision. Plaintiff cannot prove the Plan Administrator abused her discretion. Plaintiff relies on the third, fifth, sixth, seventh, and eighth *Booth* factors, *see Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). Plaintiff relied on those factors (as well as on the second) in her own summary judgment motion, and the Plan has already addressed them. (*See* Def.'s Opp'n Mem., DE29, at 9-23; *see also* Def.'s S.J. Mem., DE23, at 14-18.) In her opposition, though, Plaintiff digs a few additional rabbit holes.

Plaintiff argues the Plan Administrator should have interviewed individuals Plaintiff named in her submissions, and that not doing so means the Plan Administrator "shut [her] eyes" to Plaintiff's evidence. (Pl.'s Opp'n Br., DE26, at 10-11.) Plaintiff is quoting *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014). In *Harrison*, the plaintiff, challenging the termination of disability benefits, had followed plan procedures by providing a release for the records of a treating psychologist, but the plan administrator failed to follow through, never seeking the records, even after the plan administrator's reviewing physician said it was not possible to fully assess the plaintiff's functional capacity in the absence of those records. It was in that context that the Fourth Circuit remarked that a plan administrator could not "shut his eyes to the most evident and accessible sources of information that might support a successful claim." *Id.* Plaintiff's claim here for Severance Pay requires no such expert assessment, and Plaintiff in her submissions to the Plan Administrator reported what she alleges those witnesses said. What, exactly, would have been the point of interviews? Plaintiff doesn't say. And that brings us to *Harrison*'s observation that "plan administrators possess limited resources" and "there are practical constraints on their ability to investigate the volume of presented claims. The rule is one

of reason." *Id.* at 22. "Reason" does not suggest witness interviews would have made the slightest difference. Moreover, in *Harrison*, unlike here, there was "little in the record to suggest the claim deficient." *Id.* at 24. Here, in contrast, *everything* in the record shows that Plaintiff's claim for benefits was not just deficient, but baseless.

Plaintiff asserts there is an "absence of materials showing Plaintiff performed poorly at work." (Pl.'s Opp'n Br., DE12, at 12.) As already discussed at length, that is flat-out wrong. **The Administrative Record shows in page after page – including Plaintiff's own submissions on both her initial claim for benefits and on appeal – that, in the eyes of USAA, Plaintiff was performing poorly, and that Plaintiff herself believed it was not possible for her to perform well.** "[I]n full transparency," Plaintiff confessed, "I would not have hired me." (AR90.)

Plaintiff says the Plan Administrator "advance[s] [] new justifications for its denial" of Severance Pay on judicial review. (Pl.'s Opp'n Br., DE12, at 14-15.) That is obviously untrue. The Claims Administrator denied Plaintiff's initial claim for benefits because her termination was "due to your failure to meet standards of job performance." (AR57.) The Plan Administrator's final determination denied Plaintiff's claim for benefits because her termination was "due to your failure to meet standards of job performance." (AR182.)[8] On the first page of the Plan's Memorandum in Support of Summary Judgment, it says:

> A "Qualifying Termination" for severance under the Plan, however, does "**not** include," among other things, "***Termination due to the failure to meet standards of job performance***." (Plan §2.1(j)(iv), AR47; some emphasis added.) As outlined herein and reflected in the administrative record of Plaintiff's application for Plan benefits, Plaintiff failed to meet the standards of job performance. If she had been performing her job, USAA certainly would not have invested so much in her only to terminate her employment seven weeks after it started, as discussed below.

---

[8] Plaintiff falsely asserts on page 9 of her reply in support of summary judgment (DE-31) that on page 15 of Defendant's memorandum in support of summary judgment (DE-29), "Defendant admits it did not consider all comments, documents, and information Plaintiff submitted." Page 15 of docket entry 29 says no such thing.

16

Case 3:22-cv-00146-MOC-SCR    Document 33    Filed 12/23/22    Page 16 of 20

(Def.'s S.J. Mem., DE23, at 1.)

Plaintiff observes that "to defeat a motion for summary judgment, the opponent must offer disputed facts and more than bare denials." (Pl.'s Opp'n Br., DE26, at 17.) That is exactly right. But bare denials (along with highly technical but wrongheaded legal arguments) is all that Plaintiff offers. She cannot create a genuine dispute over whether she was terminated "due to the failure to meet standards of job performance," where in her own application for benefits to the Claims Administrator she admitted, "in full transparency, I would not have hired me to do the role as Robin [Kirby] has since defined it." (AR90.)

Finally, Plaintiff devotes nearly five pages of her 24-page brief pointing out that the Plan Administrator had a structural conflict of interest because the Plan provides "[t]he Employer shall pay Severance Pay from its current operating funds." (Plan §3.1, AR48.) That is undisputed. Plaintiff rather strangely says the Plan argues "the structural conflict did not exist." (Pl.'s Opp'n Br., DE26, at 20.) That's not what the Plan argues; rather to quote from its opening Memorandum, the Plan argues there must be evidence showing the structural conflict "gave rise to a conflict by the Plan Administrator that affected the Plan Administrator's decision. There isn't any." (Def.'s S.J. Mem., DE23, at 17.) The first sentence is the law, as demonstrated by the case law the Plan cites in its Memorandum. The second sentence is the plain truth – denial of benefits was required by the plain language of the Plan as applied to the Administrative Record, including Plaintiff's multiple admissions that she could not possibly meet the "standards of job performance."

The balance of Plaintiff's argument is that the Plan Administrator's supposed "failure" on the *Booth* factors she discusses demonstrates the Plan Administrator was influenced by the structural conflict. That is the same argument Plaintiff made in her own summary judgment moving brief, and it is just as circular and consequently just as invalid in her opposition:

> [Plaintiff] argues that [defendant's] decision making alone is indirect evidence from which the Court can infer that the conflict of interest affected [defendant's] decision making. [Plaintiff] reasons that the Court should closely scrutinize poorly reasoned decisions because from that poor reasoning one can infer bias. Of course, every claimant appealing a denial of benefits disagrees with the reasoning of the plan administrator. For the Court to find a conflict of interest because the administrator's reasoning was poor would essentially bootstrap the decision on the conflict-of-interest issue into our review on the merits – and render the whole discussion quite circular, and useless to the Court. In any event, no evidence exists in the record to show that the conflict of interest that [Plaintiff] asserts motivated the administrator's decision. Accordingly, the alleged conflict of interest is entitled to scant weight in the review process.

*Reed v. Int'l Painters & Allied Trades Indus. Pension Plan*, No. 12-CV-72, 2015 WL 7450891, at *5 (S.D. Ohio Nov. 24, 2015); *see also, e.g., Moskal v. Aetna Life Ins. Co.*, No. 10-14890, 2012 WL 71845, at *9 (E.D. Mich. Jan. 10, 2012) ("[W]here there is no direct evidence that an adverse decision was influenced by a facial conflict of interest, the entire inquiry risks circularity. [Plaintiff], in essence, has asked the Court to find that (1) the fact that Aetna made an arbitrary and capricious decision is indirect evidence that its decision must have been influenced by a conflict of interest, and (2) because its decision was influenced by a conflict, it must have been arbitrary and capricious"; court will not get "stuck in this circular argument"). There is, in sum, no evidence at all that the Plan Administrator was motivated by any conflict.

## IV.    Plaintiff May Not Receive an Award of Attorney's Fees and Costs.

A party may not receive an award of attorney's fees and costs under ERISA unless it has had at least "some success on the merits." *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 255 (2010). Since the undisputed facts show Plaintiff cannot succeed on her benefits claim, she likewise cannot succeed on a fee application.

## CONCLUSION

The Plan Administrator denied Plaintiff Plan benefits because the termination was "due to the failure to meet performance standards," a disqualifying reason under the Plan. Plaintiff's own

submissions in her pursuit of benefits admit that she lacked "passion" for her job and that, "in full transparency, I would not have hired me" for the job. There is, accordingly, no genuine dispute that the Plan Administrator's decision was correct. The Court should therefore grant the Plan summary judgment, deny summary judgment to Plaintiff, and dismiss the Complaint, in its entirety, with prejudice.

Filed: December 23, 2022

Respectfully submitted,

/s/ Kevin J. Dalton
Kevin J. Dalton (NC Bar No. 24197)
**FISHER PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
Email: kdalton@fisherphillips.com
ATTORNEYS FOR DEFENDANT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO. 3:22-cv-00146-MOC-DSC**

| | |
|---|---|
| LISA BENZING, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) |
| USAA OFFICER SEVERANCE PLAN, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2022, I electronically filed **DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel, Bryan L. Tyson and Hannah Auckland, via email to bryan@yourncattorney.com and hauckland@yourncattorney.com.

Respectfully submitted,

/s/ Kevin J. Dalton
Kevin J. Dalton
**FISHER & PHILLIPS LLP**